[L. A. No. 2858. Department One.—June 18, 1912.]

## ULRICH KNOCH et al., Appellants, v. JOHN HAIZLIP et al., Respondents.

EASEMENT FOR LIGHT—AGREEMENT BETWEEN ADJOINING LOT OWNERS—WANT OF AUTHORITY FOR EXECUTION.—In an action to recover for the breach of an agreement under which the plaintiffs claimed to have become entitled to an easement for light over the lands of the defendants, it is held that the defendant, who purported to execute the agreement on behalf of his codefendants, was not at any time authorized so to do, and that such codefendants were not bound thereby.

ID.—DEFENDANT SIGNING AGREEMENT LIABLE FOR BREACH.—The defendant, who signed such agreement in his own name, is not relieved

from liability thereon merely because the codefendants for whom he assumed to act were not bound.

ID.—DEED—PROVISO FOR CONTROL OF PROPERTY DURING LIVES OF GRANTORS—ONE GRANTOR CANNOT CREATE EASEMENT.—A proviso in a deed, reserving to the grantors; who were husband and wife, "the right to the use, control and proceeds of the property during their lives or the life of either of them," did not authorize the husband, during the lifetime of his wife, and without her consent, to execute any writing which would create a lien or easement as against her interest.

ID.—CONSTRUCTION OF AGREEMENT—COVENANT TO GIVE STRIP OF LAND FOR PURPOSE OF LIGHT.—An agreement between coterminous lot owners that each would "give" a certain frontage along their common boundary line "for the purpose of light," should be construed to mean that the space thus to be "given" by each of the parties was to be left vacant to the end that mutual easements of light for the two parcels should exist in the land thus to be left uncovered by any building.

ID.—CONSIDERATION — MUTUAL  COVENANTS — PERFORMANCE  BY  ONE PARTY.—The mutual covenants on the part of the coterminous owners to grant the respective easements afforded a consideration sufficient to bind both.  So also the construction by one of such owners of a building in accordance with the agreement in such manner as to render valueless a part of his lot, was a detriment he was not lawfully bound to suffer, and this constituted an ample consideration for any promise based thereon.

ID.—BREACH OF AGREEMENT—DAMAGE TO PLAINTIFFS—RIGHT TO NOMINAL DAMAGES—ERRONEOUS JUDGMENT FOR DEFENDANT.—Where the court found that the defendants, in disregard of such agreement, had erected a building covering their entire lot, and that the plaintiffs had suffered damage thereby, but failed to find the amount of the damage, the plaintiffs were entitled to nominal damages against the defendant signing the agreement, and the conclusions of law and judgment in his favor were erroneous in this respect.

ID.—FAILURE TO FIND ON MATERIAL ISSUE—DECISION AGAINST LAW.— The issue raised by the pleadings as to the amount of the damage so suffered by the plaintiffs was material, and the failure to find thereon rendered the decision one "against law."

ID.—NEW TRIAL—GROUND FOR—SPECIFICATION OF PARTICULAR ISSUES OMITTED.—A party relying upon a failure to find upon material issues must make his motion for new trial on the ground that the decision is "against law."  It is not necessary that a specification should be made of the particular issues on which findings were omitted.

ID.—RATIFICATION OF AGREEMENT BY OWNER OF LOT—JOINING IN ACTION FOR BREACH.—Where the agreement for the creation of the ease-

ment was made in the name of one who held a mere equity in the lot in favor of which it was to be created, without antecedent authority from the owner of the legal title, the latter, by joining in the action for its breach, ratifies the agreement.

ID.—ERECTION OF BUILDING IN COMPLIANCE WITH · AGREEMENT.—Where the plaintiffs, in compliance with the agreement, did erect a building on their lot, having a vacant space adjoining the defendants' lot for light, it does not lie in the defendants' mouth to say that the agreement was one which the owner of the equity could not carry out.

ID.—RECITAL OF OWNERSHIP IN AGREEMENT—ESTOPPEL TO DENY.— Where the agreement of the defendant recites that the person with whom it was made was the "owner of adjoining lots," he is estopped to deny that fact.

ID.—MEASURE OF DAMAGES FOR BREACH OF AGREEMENT.—In an action to recover for the breach of such agreement, after it had been complied with on the part of the plaintiffs by the erection of a building on their lot, leaving the stipulated strip for light, the measure of damages would be the difference between the value of their property if the agreement had been performed by the defendant and its value under the existing conditions.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Edward Judson Brown, for Appellants.

Hester, Merrill & Craig, and Jones & Weller, for Respondents.

SLOSS, J.—Plaintiffs appeal from the judgment and from an order denying their motion for a new trial.

The complaint presents two counts, one for the breach of an agreement under which, as the plaintiffs claim, they became entitled to an easement for light over the lands of the defendants, and the second to recover damages from the defendants for alleged fraud in connection with the making of said agreement. The findings of the court were against the allegations of fraud and as these findings are fully sustained by the evidence, there is no occasion to further consider this cause of action.

Most of the allegations of the first count are sustained by the findings of the court which are substantially as follows: On the twenty-ninth day of January, 1910, plaintiff Hooper owned the legal title to lots five and six in block two of the Orchard Tract in the city of Los Angeles, and plaintiff Knoch held an equity in said lands under an agreement with Hooper for the purchase thereof. The plaintiffs were preparing to erect a three-story brick business block upon said lots 5 and 6 to be occupied by Knoch as a printing house. On the day mentioned Knoch and the defendant John Haizlip executed a writing reading as follows:—

"Ulrich Knoch agrees to give one foot frontage extending on the east side of his lots 5 and 6, in block two (2), in the Orchard Tract in the city and county of Los Angeles, state of California, for purposes of light, providing that John Haizlip or parties interested with him in the ownership of the adjoining property on the east, will give two and one-half feet of land for the same purpose. Los Angeles, Calif., January 29, 1910. (Signed) Ulrich Knoch.

"John Haizlip and parties interested with him agree to give two and one-half feet of land on the west side of lot A, blk. 2 in the Orchard Tract, in the city and county of Los Angeles, state of California, for the purpose of light, providing that Ulrich Knoch, owner of adjoining lots, give one foot of land for the same purpose, Los Angeles, Calif, January 29, 1910. (Signed) John Haizlip."

On said January 29, 1910, the defendant Laura C. Janes had the legal title to said lot A of block 2 of the Orchard Tract under a deed of conveyance thereof to her by Laura Ann Haizlip executed and recorded more than five years theretofore by which deed it was provided that said Laura Ann Haizlip reserved the right to the use and occupation of said lot during her lifetime. It was found that on January 29, 1910, Laura Ann Haizlip was not the legal owner of said lot and that neither the defendant John Haizlip nor the defendant Loren L. Janes had any title to or interest in the said lot, except as husbands, respectively of Mrs. Haizlip and Mrs. Janes.

It is found that defendant John Haizlip was not at any time authorized by any of the codefendants to execute said writing in their behalf.

About the twenty-fourth day of February, 1910, the plaintiff Knoch commenced the erection of a three-story brick building upon said lots 5 and 6, setting the eastern wall thereof one foot westerly from the eastern line of said lots, and placed windows and a door therein for the purposes of light and air to said building, and afterwards completed said building.

About April 11, 1910, defendant Laura C. Janes began and afterward completed the erection of a two-story brick building on said lot A, setting the westerly wall thereof in and along the line between said lot A and plaintiffs' lots 5 and 6, but not two and one-half feet threfrom.

It is found that the westerly wall of said building on said lot A obstructs to some degree the light of the first and second floors of the plaintiffs' building; that the value of said lots 5 and 6 and of the said building thereon has been materially diminished by the erection of said building on said lot A, and the said one foot of ground upon and along the easterly side of lots 5 and 6 has been thereby rendered valueless.

There is also a finding to the effect that the defendant John Haizlip did not receive any consideration for the execution of the writing by him.

Since the defendants other than Haizlip did not join in the making of the agreement, it is apparent that the plaintiff could have no cause of action against them without establishing that they had authorized Haizlip to make the agreement on their behalf. The finding is that there was no such authority, and this finding is not included among those specified by plaintiffs as unsupported by the evidence. The appellants seek, however, to overthrow it indirectly by an attack upon the further finding that John Haizlip had no title to or interest in the lot other than as husband of Laura Ann Haizlip. It is claimed that this latter finding is contrary to a stipulation, made during the trial, to the effect that in 1903 Laura Ann Haizlip, who was then the owner of the lot, joined with her husband in a deed to their daughter Laura C. Haizlip (now Laura C. Janes, one of the defendants herein), which deed contained a proviso reserving to the grantors "the right to the use, control and proceeds of the property during their lives or the life of either of them." We are unable to see any inconsistency between these two

findings. Whether the latter one, relating to Haizlip's want
of title, be right or wrong, the finding that he had no author-
ity to bind the other defendants would still stand as an in-
supportable obstacle to any recovery against them. Further-
more, even if the court had made a finding in the exact words
of the stipulation, such finding would have afforded no sup-
port for a judgment against any one but John Haizlip. As-
suming that the reservation was valid in favor of John
Haizlip, who was a stranger to the title, it could not vest in
him the power to affect any interest but his own. It did not
authorize him during the lifetime of his wife, and without her
consent, to execute any writing which would create a lien or
an easement as against her interest. If the clause reserving
the right to the ''control of the property'' could be construed
so broadly as to permit the making of an agreement like the
one here in question, such right was reserved to Haizlip and
his wife jointly, and neither was thereby vested with the
power of acting for the other.

The appellant can point to nothing in the record, beyond
the stipulation referred to, to overcome the finding that Haiz-
lip was without authority to bind his codefendants. As we
have seen, the stipulation cannot be given such effect, and the
judgment in favor of the codefendants must accordingly
stand.

But Haizlip himself is not relieved from liability upon his
own undertaking merely because the codefendants for whom
he assumed to act were not bound. ''If the professed agent
contracts in his own name he is, of course, personally liable
upon the contract.'' (Tiffany on Agency, 369.) One of
the points strongly relied upon by the respondents is that the
agreement itself is too vague and indefinite to afford a basis
for recovery. By the agreement each of the parties agrees
to ''give'' a certain frontage ''for the purpose of light.'' It
is argued that this constitutes an undertaking to make grants
of real property, and, as such, is insufficient for want of des-
ignation of a grantee. But we think this objection is not
tenable. The writing is not the product of a skilled draughts-
man's pen. But though not worded with technical accuracy,
it still, when read in the light of the surrounding circum-
stances, plainly discloses the intent of the parties. The two
parcels of land affected were adjoining lots fronting upon

the same street. Their dividing line ran north and south, constituting the east line of lots 5 and 6 and the west line of lot A. The plaintiffs were contemplating the erection of a building. Under these circumstances the expression that each of the parties would give, respectively, "one foot frontage extending on the east side of lots 5 and 6" and "two and one-half feet of land on the west side of lot A" (in each instance for purposes of light), would, according to the ordinary significance of the words, be taken to mean just what the appellants contend it means, that is, that the space thus to be "given" by each of the parties was to be left vacant to the end that mutual easements of light for the two parcels should exist in the three and a half feet thus to be left uncovered by any building. There can be no serious doubt as to the identity of the land described by the expression "one foot frontage extending on the east side of his lots 5 and 6." Clearly this designates the strip of land one foot in width along the length of the said east side, and a similar meaning is the natural one to be attributed to the words "two and one-half feet of land on the west side of lot A" used in the second part of the agreement.

If, then, the plaintiffs had a contract binding upon the defendant John Haizlip whereby, in consideration of plaintiff's leaving unoccupied one foot of their land, they were to have an easement of light over two and one-half feet of the adjoining lot, it would seem obvious, even without any finding to that effect, that damage would ensue to the plaintiffs from a breach of such agreement. But here the court did make an express finding as above stated, that the value of said lots 5 and 6 and of the building thereon has been materially diminished by the erection of said building on lot A and that the one foot of ground left vacant by plaintiffs has been thereby rendered valueless. The plaintiffs having complied with the agreement on their part, and said agreement having been broken to the damage of plaintiffs, we are unable to see why a judgment for such damages as may have been suffered should not be rendered against the defendant John Haizlip. The only finding which would seem to authorize the judgment in favor of this defendant is one that he "did not receive any consideration for the execution of said writing so executed by him." This finding must be disregarded as entirely

without the issues. Besides, it is in conflict with the undisputed evidence. The mutual covenants on the part of Knoch and Haizlip to grant the respective easements afforded a consideration sufficient to bind both. Also the construction by plaintiffs of their building in accordance with the agreement in such manner as to render valueless one foot of their ground was certainly a detriment which they were not "lawfully bound to suffer" and this constituted an ample consideration for any promise based thereon. (Civ. Code, sec. 1605.)

While the court found that the plaintiffs had suffered damage, it failed to find the amount of the damage. Even without any finding of the amount, the plaintiffs were entitled · to nominal damages, and the conclusions of law and judgment in favor of Haizlip were erroneous in this respect.

Furthermore, it was error to fail to find the amount of damage. This was put in issue by the pleadings, and the issue thus raised was clearly material. A failure to find on material issues renders the decision one "against law." (*Knight* v. *Roche,* 56 Cal. 15; *Swift* v. *Occidental Mining etc. Co.,* 141 Cal. 161, [74 Pac. 700] ; *Kaiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828], and cases cited.) This was one of the grounds stated in the notice of intention to move for a new trial. It is said, in *Kaiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828], that the moving party must, in some form, specify the particular issues on which findings were omitted. But this declaration was not necessary to the decision, and is based upon the citation of an authority (*Haight* v. *Tryon,* 112 Cal. 6, [44 Pac. 318]), which does not support it. All that was held in *Haight* v. *Tryon* was that a party relying upon a failure to find must make his motion for new trial on the ground that the decision is "against law." We find nothing in the code requiring any further specification. Where a finding is assailed as unsupported by the evidence, there must be specifications of insufficiency (Code Civ. Proc., secs. 648, 659), and, where a motion for new trial is made on a statement (sec. 659, subd. 3), or on the minutes of the court (sec. 659, subd. 4), errors of law relied upon must be specified. In the absence of any similar provision regarding a claim that the decision is "against law," we see no ground for holding that any specification of issues not found is called for.

The respondent Haizlip contends that there should be no judgment against him because Knoch was not the owner of the legal title to lots 5 and 6, and therefore could not carry out any agreement to create an easement in said lots. (Civ. Code, sec. 804.) But it is found that Knoch did own an equity, and the complaint alleges that Hooper, the owner of the legal title, authorized the making of the contract in his behalf. Even if there had been no antecedent authority, Hooper, by joining as plaintiff in the action, has clearly ratified the agreement. Furthermore, it is found that the plaintiffs (i, e. Knoch and Hooper) did erect a building on lots 5 and 6 in compliance with the agreement. The benefit for which Haizlip contracted has, therefore, been conferred on lot A, and it does not lie in this defendant's mouth to say that the agreement was one which Knoch could not carry out. A further answer to the point is that the agreement signed by Haizlip describes Knoch as "owner of adjoining lots." This is a recital, which, in an action between the parties to the agreement, Haizlip is estopped to deny. (Code Civ. Proc., sec. 1962, subd. 2.)

It may be well, as guide to further proceedings in the court below, to indicate our view of the proper measure of damages. The court below seems, after some discussion, to have taken the position that the damages, if the plaintiffs had a right to recover, were to be measured by the difference between the value of their property if the agreement had been performed and its value under the existing conditions. This conclusion we think is correct and in accordance with the rule declared in section 3300 of the Civil Code. If the action against John Haizlip be viewed as one for the breach of an implied warranty of authority, the measure of damages would be the same. (Tiffany on Agency, p. 573.)

Under the views expressed it becomes unnecessary to consider any other points made by the appellants.

The judgment and the order denying the motion for new trial are reversed, so far as they are in favor of the defendant John Haizlip; so far as they affect the other defendants, they are affirmed.

Angellotti, J., and Shaw, J., concurred.