[Civ. No. 17532.   Second Dist., Div. One.   July 31, 1950.]

JAMES G. CRAIG et al., Respondents, v. MARJORIE REED et al., Appellants.

Norman T. Seltzer for Appellants.

Denio, Hart, Taubman & Simpson and Matthew C. Simpson for Respondents.

DORAN, J.—The complaint herein, for unlawful detainer, alleges "That under date of January 15, 1945, by written lease, there was leased to defendants . . . that certain brick building 150′ x 100′, being 100′ front, located on the North side of West Anaheim Street (in Long Beach) sometimes

numbered 525, 527, or 537, for the term of three years commencing on the 1st day of February, 1948." It is further alleged that the defendant Charles W. Carlstrom, individually, guaranteed in writing the performance of said lease.

It is then alleged that said lease by its terms terminated on February 1, 1948, and that more than 30 days prior thereto, "Plaintiffs notified Defendants, both orally and in writing, that said lease would not be renewed or extended . . . and that possession of the leased premises was demanded as of the date of the end of the term of said lease. . . . that prior to the 1st day of January, 1948, plaintiffs notified defendants that their tenancy of: Lot 4 in Block B of Chapman Tract, in the City of Long Beach . . . would terminate and end on February 1, 1948." The complaint then alleged defendants' refusal to surrender possession; that plaintiffs had agreed to lease the premises to the International Harvester Company at $800 per month; and claimed damages to be trebled, attorney fees and costs.

The answer "admits that said lease by its terms terminated on the 1st day of February, 1948," and that "said Defendants entered into possession of said premises," but denies the other allegations of the complaint. Judgment was rendered for the plaintiffs for restitution together with damages of $850 for failure to remove from the premises, $566.14 for removing septic tanks, and $210 for 14 months' rent at $15 per month, in all amounting to $1,626.14 which was ordered trebled. To this was added attorney fees of $750, making a total of $5,628.42.

At the trial defendants offered no evidence, and the trial judge observed that "The defendant having seen fit not to explain to the Court why they kept on in possession there, it seems to be a clear case for treble damages." Among other things the trial court found "that in 1946, after the execution of said lease aforesaid, by mutual agreement, consent and ratification of the parties thereto, there was added to the premises originally covered by said lease, additional territory consisting of a vacant lot described as Lot 4, Block B of Chapman Tract . . . and the rental provided by said lease was increased to the sum of $265.00 per month, and Defendants went into possession . . . and occupied the same in connection with and as a part of the same use and occupancy as that of the building originally described in said lease and under the terms thereof; and each month thereafter, to and including the month of January, 1948, Defendants paid the rental on

all of the properties aforesaid with one bank check each month.''

The trial court found that the defendants unlawfully detained possession; further, that ''said Lot 4 . . . was completely covered and occupied by septic tanks and chemical toilets theretofore placed thereon by Defendants,'' which the plaintiffs were forced to remove and store for the purpose of regaining possession. The defendants' motion for a new trial was denied, and the present appeal followed.

It is appellants' contention that the trial court's finding ''that Chapman Tract property (Lot 4) was added to that described in the lease . . . (is not) supported either by law or evidence''; that defendants ''were not guilty of any unlawful detainer with respect to the Chapman Tract and an award of damages predicated thereon is not supported''; that the finding ''that Charles W. Carlstrom as an individual was guilty of unlawful detainer finds no support in the record''; that the damages awarded are excessive ''and this is not a proper case for treble damages.''

The record discloses evidence that in 1946 there was some discussion about a place to store some septic tanks belonging to defendants which had been left on other property belonging to the plaintiffs. As noted in respondents' brief, ''on August 14, 1946, a letter was written to Ace Van & Storage Company (defendants' business name) which stated that there was a vacant 50-foot lot across the alley from the leased building, and if defendants cared to store the septic tanks there they could lease it for $15.00 per month.'' In response to this letter ''a telephone call was received from Defendants' Long Beach manager (Mr. Eldridge) and . . . it was mutually agreed that the lot across the alley (Lot 4) would be added to the existing lease . . . and that the rent under such lease ($250.00) should be raised to $265.00 per month, and that a single check for $265.00 would thereafter be paid for both properties. This was followed by actual occupancy of the lot by the Defendants,'' and the sending to plaintiffs of monthly checks for the larger amount.

At the close of the term, February 1, 1948, defendants tendered to plaintiffs a check for $265 for the next month's rent, which check was refused by the plaintiffs. Two months prior to the expiration of the lease, plaintiffs had notified defendants that the lease would not be extended or renewed and that the property had been leased to another party. The

defendants refused to surrender possession and continued to occupy the premises until after this action was instituted. Defendants never did remove the septic tanks from the other lot.

Appellants' brief directs special attention "to the paucity of evidence" supporting the trial court's finding. However, the "paucity" of evidence is not a matter here to be considered where the record discloses, as it does in the instant case, substantial evidence to sustain the finding. In reality, appellants' complaint is directed to the trial court's interpretation of the evidence which, under the circumstances, is not a matter for appellate review. When it is remembered that appellants remained silent at the trial and produced no evidence in explanation of the retention of possession, such rule would seem to be peculiarly applicable.

■ The contention that "A written contract can be altered only by another written contract or by an executed oral agreement," as provided in section 1698 of the Civil Code, and that therefore there was no valid modification, is answered by respondents' notation that the change in the lease so as to include Lot 4, "was at the very least, an executed oral agreement," and hence in compliance with the statutory requirement. It is uncontradicted that thereafter defendants immediately entered into possession of the additional lot, and by one monthly check covering both properties, paid the stipulated total rent as agreed upon in the modified arrangement. Nothing further remained to be done. Moreover, the defendants' conduct in reference thereto, was undoubtedly sufficient to work an estoppel in respect to the present denial of such amendment.

■ The appellants' other contentions are likewise untenable. At every point the findings and judgment are sustained by record evidence and are in nowise contrary to law. This is true both in respect to the finding that defendants and all of them were guilty of unlawful detainer of the two parcels involved, and in regard to the award of damages. Not only does the record reveal evidence of unlawful detainer but of aggravated circumstances accompanying appellants' retention of possession and a complete failure to offer any explanation of such conduct. That such evidence is sufficient to sustain the trial court's determination that treble damages were called for, cannot well be controverted.

The same may be said concerning the individual liability of the appellant Carlstrom who had guaranteed performance

of the lease as well as being a trustee. The record discloses evidence from which the trial court might reasonably draw the conclusion that, as stated in respondents' brief, ''Carlstrom was right in the middle of everything that happened thereafter, without any separation of his particular identity as Trustee or as individual, but apparently in both capacities.'' No reversible error has been pointed out by the appellants.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 17, 1950, and appellants' petition for a hearing by the Supreme Court was denied September 29, 1950.