41 Cal.2d 587 (1953)
CLARENCE W. COUGHLIN et al., Respondents,
v.
JOHN H. BLAIR et al., Appellants.
L. A. No. 22740. 
Supreme Court of California. In Bank. 
Oct. 20, 1953.
 Charles Reagh for Appellants.
 Krystal & Paradise and Robert E. Paradise for Respondents.
 TRAYNOR, J.
 Louise Blair, wife of defendant John Blair, owned a tract of land on the hills overlooking Hollywood. Part of the tract had been subdivided. Lot 7, the parcel involved in the present litigation, is in an unsubdivided part of the tract. It is at the apex of a triangular hill and has an exceptional view and privacy. In May, 1948, when the contract involved in this action was executed, Lot 7 was graded and had access to the public streets by means of a dirt road to Nichols Canyon Road, about 3,725 feet away. Gas and electricity had not been installed nearer than the intersection of Nichols Canyon Road and the dirt road leading to Lot 7.
 Plaintiffs Clarence Coughlin and Cathleen Coughlin, husband *593 and wife, viewed the lot several times with defendant John Blair. They informed him that they wished to purchase the lot and to build a residence thereon within the following year. They told him that, "We were ready to sign for the property at his price provided he would agree that paving would be installed, electricity and gas would be installed, all within one year from the date of the agreement; that he would have the lot surveyed and staked, all of which was to be at his cost and at no cost to us." John Blair was willing to sell the property on those terms. Accordingly, on May 30, 1948, the parties executed on a deposit receipt form the contract set forth in the footnote. [fn. 1] Plaintiff Clarence Coughlin testified that he first became aware of Mrs. Blair's name after he had looked at the deposit receipt. An escrow was opened in the name of Louise Blair. Plaintiffs paid the full purchase price of $14,000 and received a deed from Louise Blair. The deed granted plaintiffs Lot 7, with a "nonexclusive Easement for Ingress and Egress and for driveway purposes" to Nichols Canyon Road.
 On May 30, 1949, the date that performance was due under the contract, the paving had not been done and neither gas nor electricity had been brought to the lot. During the following year plaintiffs wrote four letters to defendant John Blair demanding performance. Defendants did not repudiate the contract; nor did they perform their obligations thereunder. *594 They did put temporary paving on part of the road to Lot 7 in the fall or winter of 1949. Plaintiffs' last letter, on April 1, 1950, stated that they would institute an action, if the contract was not performed within 30 days. On May 24, 1950, plaintiffs brought this action. They did not seek rescission or specific performance. Instead, they sought damages for the difference in value of the property with and without the performance promised in the contract, and special damages for the loss of the use of the property and for the increase in building costs since the date performance was due.
 At some time in 1950 permanent paving was installed on the road to Lot 7 for a distance of 1,200 feet commencing from the Nichols Canyon Road. In May of 1950 a gas line was installed over the same 1,200 feet. It cannot be ascertained from the record whether or not these installations preceded the filing of the complaint; in any event, at that time about half only of the remaining 2,525 feet of the road had even temporary paving and gas and electricity had not been brought to the lot. At the time of the trial, April 20, 1951, the road was in the same condition. No further work on the gas line was done until the week before trial, when workmen began laying a line in the direction of Lot 7. Electricity was installed to a point adjoining Lot 7 in August, 1950. There is nothing to show that plaintiffs requested or accepted performance after the complaint was filed.
 Louise Blair was named as a defendant in the complaint, but died a few days before trial. Before her death she had conveyed to defendant Marion Conger real property of which Lot 7 was a part, and Mrs. Conger agreed to assume Louise Blair's obligations to plaintiffs arising from the agreement of sale. The parties stipulated that the case should proceed with Marion Conger substituting as successor to Louise Blair. The trial court concluded that both defendants, John Blair and Marion Conger, were personally liable for the breach of the contract. Plaintiffs recovered judgment for $9,500 general damages, the difference between the market value of the property on May 30, 1949, and the market value it would have had at that time had the contract been performed, $2,300.37 special damages for the loss of use of the lot, measured by loss of use of the $14,000 paid by plaintiffs and computed at 7 per cent from May 30, 1949, to the date of trial, and $3,700 special damages for the increase of construction costs between June, 1949, and the date of trial.
 Defendants appeal, contending: (1) John Blair is not personally *595 liable for nonperformance of the contract; (2) if the judgment against John Blair is affirmed, the judgment against Marion Conger must be reversed; (3) the award of damages is not sustained by the evidence and allows plaintiffs a double recovery; and (4) several material findings of the trial court are not supported by the evidence.
 1. Liability of John Blair.
 [1a] Defendant John Blair contends that he signed the contract as an agent only and is not personally liable thereunder. He relies on the rule that an agent who acts for a disclosed principal and is dealt with by the third party as an agent does not ordinarily incur personal liability. (See, 2 Cal.Jur.2d, Agency, 132, and cases cited.) That rule is inapplicable here. [2] If the fact of agency appears in an integrated contract, and there is no unambiguous expression of an intention either to make or not to make the agent a party thereto, extrinsic evidence is admissible to show the intention of the parties. (Rest., Agency, 323(2); Carlesimo v. Schwebel, 87 Cal.App.2d 482, 488 [197 P.2d 167]; Otis Elevator Co. v. Berry, 28 Cal.App.2d 430, 433 [82 P.2d 704]; cf. Patterson v. John P. Mills etc,. Inc., 203 Cal. 419, 421 [264 P. 759].) [3a] In the present case the word "agent" appears before John Blair's signature to the contract and there is a blank following the word "owner." The reference to Louise Blair as the person who would receive the down payment as liquidated damages suggests that she is the principal. [1b] The words "Gas & Pavement & Elec. to be put at no cost to buyer within 1 yr from above date also to be surveyed by Jno H. Blair at once" indicate that the parties intended that John Blair should be personally liable for the surveying and also for installing the improvements. [3b] Thus, the contract gave plaintiffs notice that John Blair was an agent and indirectly disclosed the identity of the principal but it also contains language indicating that he was to be liable as a party to the contract. Since it cannot be definitely ascertained from the instrument whether John Blair signed solely as an agent or personally assumed the obligation to perform the contract, extrinsic evidence was admissible to determine the intention of the parties. (Carlesimo v. Schwebel, supra, 87 Cal.App.2d 482, 487-489.)
 [4] Plaintiffs conducted all negotiations with John Blair at the tract office, marked with a sign "Blair Hills Estates." John Blair stated that "he would pave" the road to Lot 7 *596 and, in response to Mr. Coughlin's question regarding the time the utilities and pavement would be installed, stated "probably by September everything would be in shape because he had invested $185,000 in bulldozing and he wanted to get started getting his money out of the tract so he was not going to lose any time in proceeding with the improvements in the tract." In the light of this evidence the trial court properly denied defendant John Blair's motion for a nonsuit. [5] Evidence later adduced [fn. 2] also supports the trial court's determination that it was the intention of the parties that John Blair be personally liable for performance of the contract. Eugene Blair, who was the brother of John Blair and who acted as the latter's agent and received a commission on the sale of the lot, testified, "At the time of my deal with Mr. Coughlin it was no argument or discussion about the paving. Mr. Blair give them an agreement that he would pave it within a year. ... Mr. Blair promised to put the gas and electricity in at a certain time, a certain time if he could do it. ... Mr. Blair set it down in the form that I drew up and said in one year's time he thought he would have it all in."
 2. Liability of Marion Conger.
 [6] Defendant Marion Conger contends that affirmance of the judgment against John Blair necessitates reversal of the judgment against her. She relies on several cases holding that a party suing on a contract may be forced to elect between a judgment against an undisclosed principal and a judgment against his agent. (Klinger v. Modesto Fruit Co., Inc., 107 Cal.App. 97, 100 [290 P. 127]; McDevitt v. Corriea (Chas.) & Bros., 70 Cal.App. 245, 254 [233 P. 381]; Ewing v. Hayward, 50 Cal.App. 708, 717 [195 P. 970]; contra: Montgomery v. Dorn, 25 Cal.App. 666, 670 [145 P. 148]; Jewell v. Colonial Theater Co., 12 Cal.App. 681, 685 [108 P. 527]; McKee v. Cunningham, 2 Cal.App. 684, 688 [84 P. 260]; see Craig v. Buckley, 218 Cal. 78, 81 [21 P.2d 430]; Rest., *597 Agency, 201(1); 39 Cal.L.Rev. 409.) That rule is inapplicable here. The evidence discloses that John Blair was not only a party to the contract but that he also acted as an agent, and the deposit receipt at least indirectly identified Louise Blair as his principal. (Rest., Agency, 144, 146, 184; see, Geary St. etc. R. Co. v. Rolph, 189 Cal. 59, 65-66 [207 P. 539].) Even if we assume that Louise Blair was an undisclosed principal the trial court properly refused to require plaintiffs to make an election.
 [7] At the outset of the trial it was stipulated that John Blair, in signing the agreement, "acted as agent for Louise Blair, that he had full authority to act as such agent, and that his act bound her." It was further stipulated that Marion Conger, as successor in interest to Louise Blair, deceased, "expressly assumes and agrees to pay and discharge any and all liabilities or obligations claimed or asserted by plaintiffs against defendants in the above entitled action, if and as adjudicated in this action." Counsel for defendants stated, "I stipulated [that this document] bound Mrs. Blair but I do not stipulate it bound Mr. Blair. He signed as agent and he is not bound except as agent." Counsel for plaintiffs replied, "I accept counsel's stipulation as far as it goes. We, of course, contend Mr. Blair was bound, that he acted not only as agent for his wife but also acted individually." Marion Conger's liability was conceded by the stipulation. She cannot now successfully contend that Louise Blair was an undisclosed principal and that by obtaining judgment against John Blair plaintiffs elected to release her from liability. (Williams v. General Ins. Co., 8 Cal.2d 1, 5 [63 P.2d 289]; Stanton v. Santa Ana Sugar Co., 84 Cal.App. 206, 210 [257 P. 907].) Plaintiffs were entitled to rely on the stipulation and to try the case on the assumption that it remained for them only to prove that John Blair was also liable.
 3. Damages.
 Defendants contend that the trial court allowed plaintiffs excessive damages by awarding them $9,500 general damages for the difference between the market value of the property with and without the performance due under the contract. Their first ground of attack is that plaintiffs failed to show that the injury was permanent. Defendants assert that they performed part of their obligations under the contract before the action came to trial and that they will perform the remainder of their obligations in the future. They conclude *598 that since plaintiffs will thus have the improvements, they would be allowed a double recovery if they also recovered damages for failure to get the improvements.
 [8] The distinction defendants would draw between a permanent and a temporary injury has no relevance in a case involving a total breach of contract. In an action for damages for such a breach, the plaintiff in that one action recovers all his damages, past and prospective. (Abbott v. 76 Land & Water Co., 161 Cal. 42, 47-48 [118 P. 425]; Van Horne v. Treadwell, 164 Cal. 620, 622 [130 P. 5]; see, Corbin on Contracts, 946.) [9] A judgment for the plaintiff in such an action absolves the defendant from any duty, continuing or otherwise, to perform the contract. (Noble v. Tweedy, 90 Cal.App.2d 738, 744 [203 P.2d 778].) The judgment for damages is substituted for the wrongdoer's duty to perform the contract. (Rest., Contracts, 313, com. c; South Memphis Land Co. v. McLean Hardwood Lbr. Co., 179 F. 417, 426 [102 C.C.A. 563].)
 [10] If there was a total breach of contract, plaintiffs properly brought their action for all their damages, general and special; since any subsequent action for additional damages would be successfully opposed by the plea of res judicata, plaintiffs' injury is necessarily permanent. It would be anomalous for a court in the very judgment that substitutes a money award for defendants' performance, and divests the court of the power in the future to require performance or to award additional damages for breach, also to determine whether or not the defendant will nevertheless render the performance from which he is absolved. Defendants rely on Spaulding v. Cameron, 38 Cal.2d 265 [239 P.2d 625], where we held that in an action to abate a nuisance a plaintiff could not recover both an injunction abating a nuisance and damages on the theory that the nuisance was permanent. That case would be in point here, if plaintiffs had obtained both damages for a total breach and a decree of specific performance requiring defendants to perform, or if defendants were still obliged to perform the contract. (See Wichita Falls Electric Co. v. Huey (Tex.Civ.App.), 246 S.W. 692, 694-695.)
 [11] If the breach is partial only, the injured party may recover damages for nonperformance only to the time of trial and may not recover damages for anticipated future nonperformance. (See Rischard v. Miller, 182 Cal. 351, 353 [188 P. 50]; Rest., Contracts, 313.) [12] Furthermore, even if a breach is total, the injured party may treat it as partial, *599 unless the wrongdoer has repudiated the contract. (Fresno Canal & Irr. Co. v. Perrin, 170 Cal. 411, 415 [149 P. 805]; Rest., Contracts, 317(2).) [13] The circumstances of each case determine whether the injured party may treat a breach of contract as total. (See, American Type etc. Co. v. Packer, 130 Cal. 459, 463 [62 P. 744]; Clarke Contracting Co. v. City of New York, 229 N.Y. 413, 419-420 [128 N.E. 241]; Helgar Corp. v. Warner's Features, 222 N.Y. 449, 453-454 [119 N.E. 113]; Corbin on Contracts, 946.) [14] If, as in the present case, the injured party has fully performed his obligations under a bilateral contract, courts usually treat a breach as partial unless it appears that performance of the agreement is unlikely and that the injured party may be protected only by recovery of damages for the value of the promise. (Gold Min. & Water Co. v. Swinerton, 23 Cal.2d 19, 29-30 [142 P.2d 22]; Rest., Contracts, 316.)
 Plaintiffs contend that there was a total breach on May 30, 1949, the date that performance was due under the contract. Even if plaintiffs could have treated the breach as total at that time, it is clear that they elected not to do so, for during the following year they kept urging defendants to perform.
 [15] A different situation was presented on May 24, 1950, when plaintiffs brought the present action. At that time performance was one year overdue. By seeking damages for the difference in the value of their property with and without performance, plaintiffs gave notice that they would no longer treat defendants' continued failure to perform as a partial breach. Defendants could not reasonably expect plaintiffs to continue indefinitely to treat the breach as partial. Even if a breach might be considered partial at the time performance is due, there is a limit to the time a promisee must thereafter await performance. The trial court could reasonably conclude that that limit was reached here. It was not shown that despite defendants' delay, plaintiffs would be assured of getting the improvements. (Cf. South Memphis Land Co. v. McLean Hardwood Lbr. Co., 179 F. 417, 426 [102 C.C.A. 563].) Despite repeated requests by plaintiffs, defendants had not installed the improvements called for by the contract. It was uncertain when if ever they would do so. Although defendants had not expressly repudiated the contract, their conduct clearly justified plaintiffs' belief that performance was either unlikely or would be forthcoming only when it suited defendants' convenience. Plaintiffs were not required to endure that uncertainty or to await that convenience and *600 were therefore justified in treating defendants' nonperformance as a total breach of the contract. (See Gold Min. & Water Co. v. Swinerton, supra; Walker v. Harbor Business Blocks Co., 181 Cal. 773, 780-781 [186 P. 356]; Losei Realty Co. v. City of New York, 254 N.Y. 41, 47 [171 N.E. 899].)
 The question remains whether the court applied a proper measure of damages. [16] Unless a statute otherwise specifically provides, the proper measure of damages for the breach of a contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, 3300.) Damages must, however, "be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." (Civ. Code, 3359.) In the present case the contract called for installation of improvements that would greatly increase the value of plaintiffs' property. The consideration was paid in advance. [17] If the work were to be done on plaintiffs' property the proper measure of damages would ordinarily be the reasonable cost to plaintiffs of completing the work. (Taylor v. North Pac. Coast R. Co., 56 Cal. 317, 320; Adams v. Hiner, 46 Cal.App.2d 681, 683 [116 P.2d 630]; cf. Avery v. Fredericksen & Westbrook, 67 Cal.App.2d 334, 336 [154 P.2d 41]; see Corbin on Contracts, 1089-1091.) [18] A different rule applies, however, when the improvements are to be made on property that is not owned by the injured party. In that event the injured party is unable to complete the work himself and, subject to the restrictions of sections 3300 and 3359 of the Civil Code, the proper measure of damages is the difference in value of the property with and without the promised performance, since that is the contractual benefit of which the injured party is deprived. (Knoch v. Haizlip, 163 Cal. 146, 154 [124 P. 998]; South Memphis Land Co. v. McLean Hardwood Lbr. Co., 179 F. 417, 423-424 [102 C.C.A. 563]; Hyatt v. Wiggins, 178 Ark. 1085 [13 S.W.2d 301, 303].)
 In the present case the contract was to be performed entirely on property that is not owned by plaintiffs. Plaintiffs did have a nonexclusive easement thereover. Defendants, however, had reserved an easement and right of way over the road, with the right of "constructing, maintaining, repairing, and operating the same." Plaintiffs proved their damages on the theory that the proper measure was the difference in *601 value of Lot 7 with and without the promised performance. Defendants did not contend at the trial or on appeal that plaintiffs had the right to pave the road and install the gas line and electricity thereon, or that they would be able independently of defendants to get the improvements. In this state of the record, we are of the opinion that the trial court invoked the proper rule for measuring the general damages. (Cf. Herzog v. Grosso, ante, pp. 219, 226 [259 P.2d 429].)
 The question arises whether the measure of damages applied by the court includes a double recovery on the ground that it allows damages on the assumption that there had been no performance by defendants whereas plaintiffs got the benefit of defendants' part performance during the period plaintiffs treated the breach as partial. If there were no performance by defendants between May 30, 1949, and May 24, 1950, there can be no doubt that the award of $9,500 damages was proper. If, on the other hand, defendants performed part of their contractual obligations to plaintiffs' benefit during the period that plaintiffs treated the breach as partial, defendants should be allowed credit therefor, since it would be manifestly unjust to allow plaintiffs to induce defendants to render such performance, and then to award plaintiffs damages as if it had not occurred.
 The performance claimed by defendants breaks down into three activities: (1) at some time in the fall or winter of 1949, temporary paving was placed on 1,225 feet of the road to the edge of Lot 7; (2) at some unspecified date in 1950 permanent paving was installed on 1,200 feet of the road to Lot 7, commencing at the Nichols Canyon Road, leaving 1,300 feet of the road with a dirt surface and the remaining 1,225 feet of the road with temporary paving only; and (3) at an unspecified date in May of 1950 a gas line was installed over the same 1,200 feet of road, leaving a 2,525-foot gap between the end of the line and plaintiffs' lot.
 Insofar as installation of the temporary paving is concerned, the record discloses that the benefit thereof to plaintiffs was included in the valuations made of the property. Witnesses Holabird and Vollmer testified that they had viewed the property shortly before the trial and that their appraisals were predicated on the condition of the road as it then existed.
 [19] Plaintiffs contend that the amount of permanent paving and the amount of gas line installed did not enhance the value of the lot, on the ground that a gap of 2,525 feet left the lot as useless and its value as unchanged as a gap of *602 3,725 feet. The testimony of the valuation experts that without the improvements contracted for the lot was useless, lends some support to this contention. In any event, since it cannot be ascertained from the record whether or not defendants installed the permanent paving and the gas line over the 1,200 feet of road before or after plaintiffs filed their complaint, we must conclude that defendants failed to establish that they were entitled to credit therefor on the ground that this work was performed during the time plaintiffs treated the breach as partial.
 The next question presented is whether defendants should receive credit for performance after the complaint was filed and before the action came to trial. In addition to the installation of the 1,200 feet of gas line and permanent paving, discussed above, defendants installed electricity to the edge of Lot 7 in August of 1950, more than two months after the complaint was filed, and began laying gas lines at a point 2,500 feet from the lot and in its general direction about a week before trial. It was not shown that it was certain that the gas line would be brought to the edge of the lot. Neither party introduced evidence to show by what amount the installation of electricity without performance of the other obligations of the contract increased the value of the lot. Did the trial court err in applying its measure of damages in the absence of such evidence?
 Ordinarily this question does not arise. [20] If the injured party accepts or urges performance by the promisor, he will not be allowed to obtain damages on the theory that performance has not been made. If the wrongdoer cannot induce the injured party to accept performance, he will ordinarily not perform. The record does not show why defendants chose to continue performance after the action was brought. [fn. 3] [21] Plaintiffs did not urge performance after the complaint was filed, and they could not prevent it. By commencing the action they fully and fairly informed defendants that instead of performance they sought money damages for the value of defendants' promise. Unless plaintiffs indicated that they were again willing to treat the breach as partial, the remedial rights provided by law were substituted for the rights under the contract. (Rest., Contracts, 313, com. c.) Thereafter defendants were absolved from all *603 duties under the contract to furnish improvements. Subsequent work to that end would not be performance of a contract then existent but would be entirely voluntary. If prompted by defendants' self-interest in the sale of other lots, such gratuitous benefit, wholly speculative on the record, would not constitute unjust enrichment to plaintiffs. [22] Parties who have totally breached a contract cannot force performance on the injured parties.
 Defendants next contend that if the award of $9,500 is upheld, the award for loss of use of the property, $2,300.37, and the award for the increase in building costs, $3,700, must be reversed.
 [23] Damages are awarded in an action for breach of contract to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract. (Coburn v. California Portland Cement Co., 144 Cal. 81, 84 [77 P. 771]; Noble v. Tweedy, 90 Cal.App.2d 738, 745 [203 P.2d 778].) [24] Damages must be reasonable, however, and the promisor is not required to compensate the injured party for injuries that he had no reason to foresee as the probable result of his breach when he made the contract. (Civ. Code, 3300; California Press Mfg. Co. v. Stafford Packing Co., 192 Cal. 479, 483 [221 P. 345, 32 A.L.R. 114]; see Corbin on Contracts, 1007.)
 Plaintiffs informed defendants at the time the contract was made that they were buying the lot as a site for a residence and that they needed the gas, electricity, and permanent paving installed within a year. Defendants were in the business of selling lots as residence sites and were fully aware of the consequences of delay in their performance. They knew that the lot was less valuable without than with the improvements, and that plaintiffs would be deprived of the use of the lot for building purposes so long as the contract was not performed. They also knew that an increase in building costs would add to the cost of the residence plaintiffs contemplated building on the lot. Had the contract been performed, plaintiffs would have had not only a more valuable lot than they now have but the use of that lot from the date performance was due for the erection of their residence. By defendants' breach of the contract, plaintiffs are not only left with a lot that is less valuable than it would have been had the contract been performed but they have been deprived of the use of the improved lot they bargained for and are faced *604 with increased building costs that would have been avoided had the contract been performed. [25] The award of damages for the difference in the value of the lot with and without the improvements compensates for the loss in the value of the lot. It does not compensate for the loss of use of the lot or the increased building costs. Accordingly, plaintiffs are entitled to damages for the loss of use [fn. 4] and the increased building costs preceding the date they treated the breach as total, in addition to the $9,500. (Tally v. Ganahl, 151 Cal. 418, 424 [90 P. 1049]; Henderson v. Oakes-Waterman, Builders, 44 Cal.App.2d 615, 617-618 [112 P.2d 662].)
 The trial court erred, however, by including in the award damages for loss of use and increase in building cost during the period between the date that the complaint was filed and the date of trial. Damages for delay during that period could be awarded only if defendant still had duties to perform. When plaintiffs filed their complaint, however, they elected to treat the breach as total and to substitute their remedies under the law for their rights under the contract. As we have seen, defendants were no longer obliged to perform and could not force performance on plaintiffs. Any delay in utilization of the property thereafter was chargeable to plaintiffs, not to defendants. (See Bomberger v. McKelvey, 35 Cal.2d 607, 614 [220 P.2d 729]; Atkinson v. District Bond Co., 5 Cal.App.2d 738, 745 [43 P.2d 867]; Richardson v. Davis, 116 Cal.App. 388, 390 [2 P.2d 860].) Defendants cannot be required to pay damages designed to give plaintiffs the benefit of their bargain as of the time of total breach, and also to pay damages because they did not thereafter do things they were no longer under any duty to do and for which they would get no credit.
 [26] By its award of damages, the trial court in effect attempted to compensate plaintiffs for the delay between the time they were entitled to damages and the time they were actually awarded damages in the form of the judgment. Such compensation is ordinarily given in the form of interest. Under section 3287 of the Civil Code, interest could not be awarded here, since the amount of damages could not be ascertained except on conflicting evidence. (Lineman v. Schmid, 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380].) *605
 The award for loss of use between the date of the complaint and the date of trial cannot, therefore, be sustained. Although, as we have seen, plaintiffs may recover damages for the amount that building costs increased between the date specified for performance in the contract and the date that the complaint was filed, the only finding on the subject is that costs increased $3,700 between the date that performance was due and the date of trial. A retrial on that issue is therefore necessary. (Royer v. Carter, 37 Cal.2d 544, 551 [233 P.2d 539].)
 4. Findings of the Trial Court.
 Defendants contend that the evidence does not support the finding that the term "paving" in the contract was intended by the parties to be "permanent paving conforming to the specifications of the City of Los Angeles for that area" and that such paving was a " 'plant mix' of three inches of rock, sand, and asphalt." [27] Extrinsic evidence was admissible to determine what the parties meant by "paving." (Code Civ. Proc., 1860; Woodbine v. Van Horn, 29 Cal.2d 95, 104 [173 P.2d 17]; Wachs v. Wachs, 11 Cal.2d 322, 325 [79 P.2d 1085]; Snyder v. Holt Mfg. Co., 134 Cal. 324, 328 [66 P. 311].) Plaintiff Clarence Coughlin testified that defendant John Blair stated at the time that the contract was executed that the pavement would be "State specifications, asphalt with asphalt shoulders." An expert witness subsequently testified that "city specifications" in the area called for three inches of rock and gravel. During the expert's testimony, the trial judge stated to defendants' counsel, "The testimony, if I understand it, is it was to be paved according to the City's specifications." Counsel replied, "That is the testimony so far." It thus appears that the case was tried on the understanding that "state specifications" and "city specifications" were the same thing, and defendants cannot successfully contend on appeal that the finding is not supported by the evidence.
 [28] Defendants next contend that the evidence does not support the finding that the difference between the market value of the property with and without performance of the contract was $9,500. Expert witnesses called by plaintiffs so testified, but defendants attack their valuations on the ground that the witnesses said they would not change their estimates "if they knew that some respectable person was under obligation to install electricity, gas, and paving." The contention is without merit. The witnesses gave their valuations *606 of the lot with and without the improvements. Their valuations of the lot with improvements necessarily contemplated the improvements called for by the contract installed by a responsible person. Defendants' objection goes, not to the soundness of the appraisal, but to the question discussed above, whether defendants can avoid liability for the difference in the value of the lot with and without improvements if they should complete the improvements some time in the future.
 [29] Defendants contend that the evidence does not support the finding that, "The breach of said agreement by defendants was deliberate." That finding is material insofar as it bears on the question whether the breach was total or partial. Defendant John Blair admitted in his deposition, which was admitted in evidence and considered by the trial court in reaching its decision, that he did not make the deposit required by the gas company before it would extend its gas line to plaintiff's lot, although he had the financial ability to make the deposit. He stated that the electricity was not installed because of a dispute between defendants and the city department of light and power over the interpretation of a contract between defendants and the city. At one point the city offered to install electricity to plaintiffs' lot without cost to defendants, if defendants would waive a claim to certain other rights under their contract with the city. Defendants would not agree. Defendants did not install permanent paving because they took the position that only temporary paving was required by the contract. It thus appears that defendants had the ability to perform the contract but for reasons they thought to their advantage refused to do so. The finding that the breach was "deliberate" is supported by substantial evidence.
 Defendants finally attack the finding that the "construction cost of a 'minimum house' (i.e., a house built at minimum cost having an area not exceeding 1500 square feet, the minimum building restrictions applicable to the lot purchased by plaintiffs) increased during the period from June, 1949, to the date of trial in the sum of $3,750.00. Plaintiffs have suffered special damage resulting from the increase of construction costs on a 'minimum house' as above defined in the amount of $3,750.00." Although, as previously pointed out, a new trial is required on this issue, the question may recur at the retrial and it is therefore necessary that we pass on defendants' contention.
 [30] There is testimony that the building costs of a "minimum house" had increased by $3,750. Defendants contend, *607 however, that there is no proof that the damages were foreseeable or that they were caused by their breach. Plaintiffs told defendant John Blair on the day that the contract was signed that they intended to build a "three bedroom, rambling house with a playhouse and swimming pool." It was testified that such a house would exceed 1,500 square feet. Defendants were thus informed of the use to which plaintiffs intended to put the property and the award of damages may not be attacked for lack of notice to defendants. (Reliance Accept. Corp. v. Hooper-Holmes Bureau, 139 Cal.App. 607, 613 [34 P.2d 762].) Defendants contend that plaintiffs "never seriously contemplated building at all" and that, accordingly, plaintiffs failed to show that but for the breach, they would have taken advantage of lower costs. At the time the contract was signed, however, plaintiffs stated that they intended to build "the following spring," the time when performance was specified in the contract. Plaintiffs actually employed an architect in June, 1949, and received plans from him in the fall of 1950. The record sustains the conclusion that but for the breach plaintiffs would have been able to take advantage of lower building costs in June, 1950.
 To the extent that it awards $9,500 general damages with interest thereon and costs, the judgment is affirmed. To the extent that it awards special damages for loss of use of the property and special damages resulting from the increase in building costs, the judgment is reversed, and the cause is remanded to the trial court to determine the damages resulting from loss of use of the property and from the increase in building costs between June 1, 1949 and May 24, 1950. Defendants are to bear the costs of this appeal.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.
 Date May 30th, 1948
 Address 106 N. Maple Dr. Bev. Hill Cr. 18642 the sum of $1000.00 being a part payment on Lot 7 in pros. Tract 15175 Metes & Bound Disp. (Subject to Restrictions and Reservations of Record) At price of $14000 payable $ _____ cash (including the within payment) balance payable as follows: $7500 in Escrow 5500 Balance on or before July 15th 1948. Gas & Pavement & Elec. to be put at no cost to buyer within 1 yr from above date also to be surveyed by Jno. H. Blair at once. Balance of first payment, to-wit: _________ dollars to be deposited in escrow within __________ days from above date and failing to make such payments, above amount paid is retained by and forfeited to Louise Blair as liquidated damages. Purchaser agrees to purchase said property at above price and terms. Agent reserves the right to refund payment if unsatisfactory to owner.
 Dated this 30 day of May, 1948 at Los Angeles, California
 Tabular Material Omitted
 I accept above sale and agree to pay__________commission of ___________
 Tabular Material Omitted
 (Italics represent terms written in the blank spaces on printed form.)
NOTES
[fn. 1] 1. "Received from Clarence W. Coughlin & Cathleen L., Married
[fn. 2] 2. Defendant John Blair stated at the close of plaintiff's case that he would "stand on his motion for a nonsuit" and would not introduce evidence on his behalf. Defendant Marion Conger introduced evidence to defend the action against her and, on cross-examination, plaintiffs elicited additional evidence supporting their case. That evidence may be considered by an appellate court in reviewing the sufficiency of the evidence to support the trial court's determination that it was the intention of the parties that John Blair be personally liable for performance of the contract. (See Peters v. Southern Pac. Co., 160 Cal. 48, 52-53 [116 P. 400].)
[fn. 3] 3. It is suggested in the briefs (but on the record this is entirely speculative) that defendants may have had contractual obligations to other purchasers of lots or wished to increase the value of their unsold lots.
[fn. 4] 4. The trial court measured damages for loss of use at the rate of 7 per cent per annum on the $14,000 purchase price paid in advance. Neither party questions loss of use of the money as a proper measure of damages for loss of use of the property. Plaintiffs did not appeal and defendants have claimed no prejudice.