[Civ. No. 853.   Fifth Dist.   Sept. 20, 1968.]

ROBERT M. SCOTT et al., Plaintiffs, Cross-defendants and Respondents, v. TRAVELODGE CORPORATION, Defendant, Cross-complainant and Appellant.

---

Flint & McKay and John C. Argue for Defendant, Cross-complainant and Appellant.

Crowe, Mitchell, Hurlbutt, Clevenger & Long and Edmund C. Hurlbutt for Plaintiffs, Cross-defendants and Respondents.

CONLEY, P. J.—This is a controversy between the lessors and lessee of land located at the outskirts of Visalia and owned by the plaintiffs and on which, by virtue of a lease with a long but uncompleted term, the defendant has constructed and is conducting a motel. The plaintiffs, living at Three Rivers in the same county and owners of the land, sued the TraveLodge Corporation for the balance of rental alleged to be due under the unamended original lease. The Trave-Lodge Corporation in turn, by a cross-complaint, sued the Scotts for damages alleged to have been caused by the plaintiffs' failure to comply with the terms of the lease in that the plaintiffs, by paragraph 27, covenanted to do three things, first, to construct within a reasonable length of time a restaurant and bar on lessors' property "adjacent to and East of the premises"; second, in this connection, to obtain the written approval by lessee of the "plans and specifications of said restaurant and bar prior to commencement of construction"; and third, to have the bar and restaurant maintained so as not to conflict with "but on the contrary, to cooperate with the operation of the Inn herein referred to." The presiding judge found, after trial, that the Scotts breached all three provisions of the agreement: (1) they failed to cause these eating and drinking accommodations to be constructed within a reasonable time, (2) they failed to obtain approval by the TraveLodge Corporation of plans for their construction, and (3) they did not cause the restaurant and bar, after construction, to be operated and maintained "so as not to conflict with, but on the contrary to cooperate with, the operation of the motel constructed by defendant." There is no present contention by respondents that the court's findings in these three respects are faulty; it was five years before the restaurant and bar were installed. In the meantime, contrary to

good neighborliness, but unfortunately not as a breach of the lease because it was not provided against therein, the Scotts within the five-year period granted a second organization the right to build and operate another motel between the Trave-Lodge and the newly constructed restaurant; the TraveLodge people were thus treated without a decent respect for business and social principles. The court did award the Scotts, instead of what they asked for in the complaint a much less sum, only what was due them under the modification of the lease hereinafter referred to. Realistically, the appeal involved only the question of damages on the cross-complaint including the attorneys' fees awarded the plaintiffs.

Section 3300 of the California Civil Code provides the following measure of damages arising from a breach of contract in circumstances such as are developed in this record: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Generally speaking, the true rule to ascertain the damages suffered by the cross-complainant is thus set forth in *Knoch* v. *Haizlip,* 163 Cal. 146, 154 [124 P. 998]: "It may be well, as guide to further proceedings in the court below, to indicate our view of the proper measure of damages. The court below seems, after some discussion, to have taken the position that the damages, if the plaintiffs had a right to recover, were to be measured by the difference between the value of their property if the agreement had been performed and its value under the existing conditions. This conclusion we think is correct and in accordance with the rule declared in section 3300 of the Civil Code." (See also *Couglin* v. *Blair,* 41 Cal.2d 587, 600 [262 P.2d 305]; *Rakish* v. *Valerga,* 125 Cal.App.2d 274 [270 P.2d 50].)

The trial court, however, made two findings with respect to damages on the cross-complaint that, in its view, prevented the award of any additional amount; the court found that an agreed amendment of the original lease with respect to rental was effected by an executed oral agreement of the parties as a complete solution of the damage question; this agreement resulted in the reduction of rental from a guaranteed minimum of $800 per month to 7½ percent of the gross receipts, and the court determined that this change constituted a complete

settlement of damages caused in the three particulars above noted. Entirely apart from that controlling reason, the court believed that the proof of alleged damages was vitally deficient.

Among various suggestions made by the appellant, it seems to contend that in each of the three instances in which the plaintiffs did not comply with the agreement there could be separate damages. This construction loses sight of the practical situation caused by the three requirements inserted in the lease with respect to the building and maintenance of the bar and restaurant. While they were separately stated, they actually consisted basically of but one undertaking with respect to the building and maintenance of a restaurant and bar, and it would be difficult if not impossible, it seems to us, to carve out separate damages as flowing from each of the three failures. We do not see, for example, how the failure to secure the written approval of the plans for the restaurant and bar could be realistically separated as to damages from the provision requiring cooperation, or in fact from the provision requiring the construction of the restaurant and bar within a reasonable time. All three provisions are interdependent and it would be virtually impossible to segregate three separate areas of damage. To do so would be analogous to splitting a cause of action.

We mention this rather obvious fact before we consider the findings of the court to the effect that the amendment of the lease accordingly was in effect a final arrangement relative to the right to seek damages by other means.

Paragraph 10 of the findings of fact reads as follows:

"The lease dated July 27, 1959 between the parties was modified by the Plaintiffs and Defendants by an executed oral agreement entered into on or about January 30, 1961. This agreement modified Paragraphs 2 and 26 of the lease agreement in the following particulars:

"(a) It was agreed that the minimum monthly rental at the rate of $800.00 per month provided in Paragraph 2 of said lease would not be effective from and after the effective date of said amendment until such time as Plaintiffs shall comply with the provisions of Paragraph 27 of said lease.

"(b) It was further agreed that the rentals to be paid by Defendant under said Paragraphs 2 and 26 would be equivalent to $7\frac{1}{2}\%$ of the amount of the gross receipts (as that term is defined in Paragraph 26) from the operation of the lease.

payable monthly, until such time as Plaintiffs shall comply with the provisions of Paragraph 27 of said lease.

"(c) Finally it was agreed that the references to the minimum monthly rental of $800.00 and to the minimum yearly rental of $128,000.00 in said Paragraphs 2 and 26 shall be of no force or effect until such time as lessors comply with the provisions of Paragraph 27 of said lease. Said executed oral agreement did not modify the lease in other particulars."

These findings, followed in turn by the conclusions of law and the judgment, were in accordance with the evidence received during the trial. Scott King, president of the defendant corporation and chairman of the board, testified concerning the conversation of January 30, 1961, with respondents in regard to the modification as follows:

"We had expressed that we felt that we would—should compromise the terms of the lease to the extent that, instead of having an eight hundred minimum guarantee—see, the terms of the lease called for 7½ per cent of the gross income to be paid to the Scotts, before we paid the taxes and the works, with a minimum guarantee of $10.00 a room a month. Now, there is 80 rooms, so $10.00 a room a month was $800.00. Because of the fact they had failed to comply with their agreement to build a restaurant, we should pay rent based on 7½ per cent of the gross without a minimum until such time as they produced a restaurant in accordance with their agreement. They agreed to that."

After objection was made to the phrase, "They agreed to that," the witness stated, "As far as I recall, Mr. and Mrs. Scott said they felt there was nothing else we could do."

Again, with reference to the same conversation, Scott King testified as follows:

"A. The gist of it, that we had decided, because Mr. Rodden was unhappy, that we were unhappy, that we needed some relief, and we had alternatives—one would be to take legal action to enforce the agreement or to abrogate the lease or to adjust the rent—and that we were about to the point where we thought we had better start something.

"Q. All right. You told—you told him in substance then, Mr. Scott, that you were going to adjust the rent?

"A. As an alternative we suggested that. He said, 'Well, I don't know how we can do anything else.'

"Q. In return for adjusting the rent, what did you tell him the TraveLodge was going to do?

"A. We would give him still more time to try to get his restaurant developed.

"Q. Did you tell him in substance, as long as he didn't get the restaurant on there, the rent would stand readjusted at the figure you previously expressed?

"A. That's what we proposed, and we understood that's what he agreed to."

Various letters received in evidence confirmed the modification of the lease in the respect found by the court. By letter dated May 2, 1961, Kenneth E. Cocks, assistant to the president of the TraveLodge Corporation, stated to the respondents that the rental would be computed at 7½ percent of the income from the motel, and that "this percentage figure will continue to be paid you each month until we know that a restaurant is in operation in accordance with paragraph 27, page 13 of our lease with you." In a following letter, dated May 22, 1961, Mr. Cocks again confirmed the modification of the lease as follows:

"If a restaurant is not in operation by this date (September 1) we will commence to pay only 7½% of the gross income until a restaurant is in operation in accordance with the lease between the corporation and Mr. and Mrs. Scott."

Again, on January 24, 1962, Mr. Cocks said:

". . . effective September 1, 1961, the amount of lease rental payment will be 7½% of the gross income of Visalia TraveLodge, until such time as an adjacent restaurant is in operation in accordance with Paragraph 27, page 13 of our lease with you."

■ Unquestionably, the change in the lease which the court found to have been made in accordance with substantial evidence was effected because of the breach of the promises of the Scotts with respect to the construction and maintenance of the eating place and the bar. Without doubt, the changed provision of the lease reducing rentals was the result of the breaches of the Scotts, and was adopted because of the damage done thereby to cross-complainants. It seems to us unthinkable to say that the TraveLodge organization could procure an amendment of the lease reducing rentals because of the breach by the lessors of the provisions of the lease and could also renew at a later date a contention that additional damages should be awarded. Modifications of contracts under executed oral agreements are frequently made in the business world, as examples, we cite *Julian* v. *Gold,* 214 Cal. 74 [3 P.2d 1009]; *Craig* v. *Reed,* 98 Cal.App.2d 695 [220 P.2d 771];

and *Bleakley* v. *Carnes,* 209 Cal.App.2d 577 [26 Cal.Rptr. 115] (see Civ. Code, § 1698).

We cannot see our way clear to set aside the conclusion of the trial court to the effect that the parties themselves settled their differences as to damages by the amendment of the provision of the original lease as to reduced rentals as developed by the evidence.

It should not be necessary, therefore, to discuss the second observation of the trial court to the effect that even if the controversy had not been settled as above found, the proof of damages was not sufficient.

Appellant's objection to the award of attorneys' fees is without substantial merit. The judgment awarded only $886.55 as delinquent rental; the plaintiffs sued for $12,-916.52, and the trial itself lasted four days. Testimony showed that the bill of counsel for plaintiffs to their clients for services rendered to March 21, 1966, was $2,335 and that a further charge of $300 per day would be made for the time occupied by the trial. ▮ The determination of the recoverable fee was a question of fact within the discretion of the trial court. (6 Cal.Jur.2d Rev., Attorneys at Law, § 101, pp. 169-172.)

The judgment is affirmed.

Stone, J., concurred.