[Civ. No. 9515. Second Appellate District, Division Two.—April 3, 1935.]

R. C. ATKINSON et al., Respondents, v. DISTRICT BOND COMPANY (a Corporation), Appellant.

Dryer, Castle & Richards for Appellant.

DeForrest Home, Wilbur D. Finch and Eugene Kelly for Respondents.

WILLIS, J., *pro tem.*—This is an appeal by defendant from a judgment for damages for breach of contract.

Plaintiffs, doing business under the firm name of Atkinson & Reish, allege in their complaint that they entered into an agreement in writing with defendant on March, 16, 1931, wherein they agreed to bid for certain street improvement work in the city of Santa Barbara, California, and to perform the work if a contract was awarded to them, defendant agreeing to buy the warrant and bonds issued in payment of the work at a price of 96 per cent of their par value, if approved by an accredited bond attorney, and also agreeing to loan to plaintiffs sums not exceeding 75 per cent of the contract price for the work, at 7 per cent per annum until date of bonds; that on June 18, 1931, plaintiffs' bid was accepted for the work and a contract awarded by the city for the price of $49,009.33; that prior thereto and on March 23, 1931, defendant repudiated its agreement to buy the bonds and loan money, and notified plaintiffs that it would not carry out the agreement; that plaintiffs notified defendant that they would not release defendant. It is then alleged that plaintiffs performed all the terms and conditions of the agreement with defendant, and that plaintiffs were compelled, by reason of defendant's refusal to carry out its agreement, to borrow money at 12 per cent per annum and to sell the warrant and bonds to be issued on the street improvement contract to others at 83 per cent of their value, all to the damage of plaintiffs in the sum of $3,343.13.

In its answer defendant denied that it repudiated the agreement, alleged that the street improvement proceedings on which the award was made were illegal and void, and that it was thereby released from the obligations of such agreement; admitted that plaintiffs notified it that they would hold defendant to said agreement, and denied that plaintiffs had performed the agreement, and alleged that pursuant to a resolution of the city council of Santa Barbara dated March 5, 1931, plaintiffs had filed a bid but that no award or contract was made thereon by the city, by reason whereof

defendant was relieved of its obligations to plaintiffs under their agreement.

In an opening statement at the beginning of the trial counsel for plaintiffs announced that plaintiffs were going to stand directly upon the repudiation or anticipatory breach as alleged, notwithstanding the allegations of performance on their part and refusal of defendant to perform. Upon the offer of proof of repudiation, defendant objected to its admission, the objection being founded on the ground that proof of repudiation is not admissible in a case where the complaint is founded on allegations of full performance. ■ The rule is well understood that a recovery on proof of excuse for nonperformance cannot be had on an allegation of full performance. (*Peek* v. *Steinberg,* 163 Cal. 127 [124 Pac. 834]; *Kirk* v. *Culley,* 202 Cal. 501 [261 Pac. 994].) ■ We find herein, however, that plaintiffs alleged repudiation as well as performance, both of which were put in issue by the answer, and that they elected at the beginning of trial to proceed on the theory of repudiation, thus abandoning the theory of full performance by plaintiffs followed by breach by defendant. Notwithstanding no amendment of the complaint was requested or made, we are satisfied that no error occurred in admitting the evidence relating to repudiation over defendant's objection. It is with the probative effect of such evidence that our chief concern is here aroused.

The evidence reveals that the agreement here in question was executed on March 16, 1931. On March 19th, plaintiffs submitted their bid for $44,174.80. On March 23d defendant notified plaintiffs in writing that it withdrew its offer to take the warrant and bonds and declared that the contract of March 16th "is made void and rescinded" on account of erroneous information furnished concerning the job. On March 26th the contract was awarded to R. C. Atkinson, instead of to the bidder, Atkinson & Reish, by reason of a mistake in signature on the bid. On April 15th the attorneys for plaintiffs sent a letter to defendant in answer to defendant's letter of March 23d, stating therein that "our clients will not cancel the contract or execute the release you request in your letter of March 23rd, but on the contrary, will hold you strictly to your admitted obligations, and if you fail to properly perform your contract they will look to you

for satisfaction of any loss sustained by them by reason of your contract''. On April 17th an attorney for plaintiffs sent a letter to defendant in substance requesting a definite statement of its intention in respect to performance of the contract. On April 18th defendant replied thereto, inclosing an opinion of attorneys in respect to the validity of the improvement proceedings and stating that in view thereof ''it would be impossible for us to advance any money or purchase any bonds or warrant issued for the cost of this job'', and that ''in any event, under the legal complications involved, we disclaim any liability under said contract''. On April 23d plaintiffs' attorney replied to this letter, stating that ''Mr. Atkinson wishes me to state that he has never at any time, either expressly or otherwise, released the District Bond Company from any obligations under the contract and, furthermore, that he has at all times advised your office that he is ready, willing and able to perform the contract and expects the District Bond Company to perform it also''. On April 30th the city council rescinded the award of March 26th to R. C. Atkinson, and on June 4th readvertised for bids on that work. On June 18th, plaintiffs submitted their bid in the firm name in the sum of $49,-009.32, which was accepted and the contract for the work awarded thereon, and on June 20th plaintiffs made an agreement with another finance company to take the warrant and bonds to be issued, and when issued upon this last award, at 83 per cent of par value. On July 6th the city council and plaintiffs executed the contract for the street improvement work on the award of June 18th, and on February 27, 1932, the bonds were issued in payment of the work performed under this contract. The complaint herein was filed on March 16, 1933.

Upon this evidence the court found that defendant, by its letter of March 23d, had repudiated the contract and that plaintiffs had notified defendant that they would expect it to carry out its contract, and that in event defendant failed so to do they would hold it responsible for all damages which they might sustain thereby; that the city advertised for bids to be opened on June 18, 1931, and that plaintiffs filed their bid; that on that date it was accepted and an award made on said bid for $49,009.32 and a contract executed between the city and plaintiffs for the doing of said work;

that as a result of said repudiation plaintiffs were compelled to sell the bonds elsewhere for less than defendant had agreed to pay, to plaintiffs' damage in the sum of $2,638.97, and had been compelled to borrow money at the rate of 12 per cent instead of at 7 per cent as provided in said contract, to their further damage in the sum of $421.87, making a total damage of $3,060.84. The court also made a finding that except as otherwise found, all the allegations of the complaint were true, except that "no finding is made as to the allegations of paragraph VI of plaintiffs' complaint which were treated as surplusage and concerning which no evidence was offered". The allegations referred to and as to which no findings were made related to full performance by plaintiffs. In addition the court found that the street improvement proceedings were not illegal, as alleged in the answer.

█ Where one party to an executory contract refuses to treat it as subsisting or binding upon him there is, in legal effect, a prevention of performance by the other party. A mere declaration, however, of a party of an intention not to be bound will not of itself amount to a breach, so as to create an effectual renunciation of the contract; for one party cannot by any act or declaration destroy the binding force and efficacy of the contract. To justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal and absolute. █ The real operation of a declaration of intention not to be bound appears to give the promisee the right of electing either to treat the declaration as *brutum fulmen* and, holding fast to the contract, to wait until the time for performance has arrived, or to act upon the declaration and treat it as a final assertion by the promisor that he is no longer bound by the contract, and as a wrongful renunciation of the contractual relation into which he has entered. If he elects to pursue the latter course, it becomes a breach of contract, excusing performance on his part and giving him an immediate right to recover upon it as such. Upon such election the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist, except for the purpose of maintaining an action for the recovery of damages.

(6 Cal. Jur. 458–460; *Walker* v. *Harbor Business Blocks Co.*, 181 Cal. 773 [186 Pac. 356].)

■ Viewing the evidence herein and the findings based thereon in the light of the foregoing rules, it is manifest that the letter of March 23, 1931, was a mere declaration of defendant not to be bound, and of itself did not amount to a breach so as to effect a renunciation of the contract. And by their letter of April 15, 1931, in response thereto, plaintiffs negatived any acquiescence therein by declaring that they would not release defendant from the contract but would hold it strictly to its obligations, and if not properly performed would look to it for satisfaction for all loss sustained. ■ However, on April 18, 1931, in reply to a request from plaintiff's attorney for a definite statement of its intention, defendant sent a letter in which it declared that it would be impossible to advance the money or purchase the bonds or warrant issued on the job, and that in any event it disclaimed any liability under the contract. This was tantamount to a distinct, unequivocal and absolute refusal to perform, and constituted and was sufficient to justify plaintiffs in treating it as a breach and in exercising their election between waiting for time of performance on defendant's part and treating it as a final assertion by defendant that it was no longer bound, acting thereon as though it were a wrongful renunciation. ■ With the parties occupying this situation in respect to repudiation, on April 30, 1931, the city council rescinded the award of March 26, 1931, to plaintiff (R. C. Atkinson), and on June 4th, advertised for bids. On June 18, 1931, plaintiffs presented a new bid, which was accepted, the award made thereon and a contract executed with the city on such new award involving a substantial increase in the amount of the warrant and bonds to be issued. Immediately after the last award and on June 20, 1931, plaintiffs entered into a new contract with another finance company to take the warrant and bonds to be issued under the last award at 83 per cent of their par value. By these acts plaintiffs must be held to have acquiesced in the rescission of the first award and the right to any contract thereon, and as having elected to treat defendant's declarations as final assertions not to be bound, thereby translating the repudiation into a breach, upon which a cause of action for damages arose. (*Sobel-*

*man* v. *Maier*, 203 Cal. 1 [262 Pac. 1087].) The rights and liabilities of the parties are therefore to be regarded as culminating, and the contractual relation terminated, except for the purpose of maintaining an action for damages, as of the date of April 18, 1931.

This brings us to a consideration of the only other question presented on this appeal, namely, did the court err in its findings of damages based on evidence of loss sustained upon a subsequent performance by plaintiffs under a later and different award? The rule, according to text-writers and our decisions, appears to provide that after an absolute repudiation or refusal to perform by one party to a contract the other party cannot continue to perform and recover damages based on full performance. (Williston on Contracts, vol. 3, p. 2347; *Richardson* v. *Davis*, 116 Cal. App. 388 [2 Pac. (2d) 860], and cases there cited.) In the latter case it is stated that a party to a contract has the power to stop performance on the other side by explicit direction to that effect, subjecting himself to such damages as will compensate the other party for the breach, and that the party thus forbidden cannot go on and thereby increase the damages. Herein plaintiffs agreed to bid on the work and, if a contract was awarded, to perform it and sell the bonds thus secured to defendant, the latter agreeing to buy them at 96 per cent of their par value. Plaintiffs partially performed by their bid of March 19th, and then the repudiation intervened. The award was made on plaintiffs' first bid and later rescinded. At this juncture plaintiffs were under no obligation to defendant to perform the agreement by again bidding for the work, as defendant had repudiated it, and they had no right to go on and thereby increase the damages for such breach. Nor were plaintiffs under any legal duty to bid again for the work. It therefore becomes manifest that it was error to assess damages on the basis of evidence of the subsequent bid and award and bonds issued thereon. The damages, if any other than nominal, which will compensate plaintiffs must be ascertained and determined under the theory of repudiation and not under that of subsequent performance.

The judgment is reversed.

Stephens, P. J., and Crail, J., concurred.