Herbert CAMPOS, Appellant,

v.

Carl E. OLSON, Also Known as Carl "Bobo" Olson; Sid E. Flaherty and Sid Flaherty Promotional Enterprises, a Corporation, Appellees.

No. 15183.

United States Court of Appeals Ninth Circuit.

Feb. 15, 1957.

Rogers & Clark, Lawrence W. Jordan, Jr., and Ernest O. Meyer, San Francisco, Cal., for appellant.

Bernard B. Glickfeld and Howard C. Ellis, San Francisco, Cal., for appellee.

Before STEPHENS, ORR, and LEMMON, Circuit Judges.

ORR, Circuit Judge.

Appellee Carl E. "Bobo" Olson was at one time middleweight boxing champion of the world. In fighting his way to the title he had different managers, one of whom was appellant Campos. At the time appellant undertook to manage Olson, appellant was inexperienced in this field of activity. Two agreements were executed by the parties; each provided for the exclusive management of Olson by Campos, who was to secure boxing matches for Olson, proceeds therefrom going two-thirds to Olson and one-third to Campos. The contracts were executed in Hawaii and were filed with the Territorial Boxing Commission of that Territory, as required by law. The second agreement was not approved by the said Commission. Olson, at the time of entering into the first agreement (July 14, 1948) was twenty years old; the second agreement (July 20, 1949) was signed after Olson had reached his twenty-first birthday.

Relations between appellant and Olson eventually reached an unsatisfactory stage because appellant, as claimed by Olson, was not performing according to the agreement in that Olson was not being afforded matches, and as a result was becoming financially impoverished. Appellant expended several thousands of dollars, a substantial part of which was

advanced for the support of Olson. The sum of $6548.69 of these advances was later recovered by Campos on a stipulated judgment against Olson. The picture disclosed by the evidence makes it appear that the situation could not continue, and consequently Olson expressed a desire to go to the Mainland in order to get matches and thus earn money.

Appellant had scheduled a match between Olson and one Chuck Hunter for June 19, 1951. The bout was postponed by agreement of the respective managers. Olson, resenting the postponement which had resulted in the loss to him of training expenses, wrote a letter to the Territorial Boxing Commission alleging incompetence on the part of his manager, Campos, and further stated therein that he no longer would be available for matches in the Territory.

As a result of Olson's letter to the Commission, an informal meeting was held before it on June 19, 1951, with the announced purpose of straightening out the difficulties existing between Campos and Olson. This effort failed. With the consent of appellant, as is asserted by Olson, he came to the United States immediately after the June 19, 1951, meeting with the Commission, and fought under the management of appellee Sid Flaherty. Olson's career thereafter for a considerable length of time became more successful and remunerative. Appellant, cognizant of this success, after a lapse of about two years, brought an action against Olson in the state courts. On June 10, 1955, Campos filed the present action against Olson alleging breach of contract and joining Flaherty as a codefendant alleging inducement of the breach on his part.

At this juncture, after having examined the record we quote with approval a statement of the trial court in its order for judgment:

> "Cases in which claimants or unknown relatives appear, after long silence, to claim some of the fruits of another's labors or property, are not unfamiliar to American courts. This is such a case."

Anticipatory breach of contract on the part of Olson is said to be evidenced by an alleged statement made by Olson to appellant some time prior to the June, 1951, meeting of the Commission and the letter from Olson to the Commission.

Olson and Flaherty, in their answer, admit the validity of the 1948 contract, which was approved by the Territorial Boxing Commission, and deny the validity of the 1949 agreement. Several defenses are raised in the answer, among which are abandonment and waiver.

■ Appellant argues that the evidence clearly discloses an anticipatory breach of the contract by Olson in that Olson at the trial testified as follows:

(During direct examination of Olson as an adverse witness)

"Q. You state in the letter as follows—I am quoting from it, Mr. Olson: 'My Territorial manager was aware that rescheduling the Hunter bout would work an undue hardship on me to meet commitments on the mainland,' Was that true?

"A. It was true because I told him I was going after the fight.

"Q. Well, did you have any commitments on the mainland at the time you signed this letter?

"A. No.

"Q. Do you know what I mean by commitments?

"A. Yes, I know. I had no commitments. I told Mr. Campos I was leaving."

There is no evidence of appellant's reaction to the statements; nor is there evidence fixing the time and place. The statement is insufficient to constitute an anticipatory breach because it is not an unequivocal and absolute repudiation of the contract.

"A mere declaration, however, of a party of an intention not to be bound will not of itself amount to a breach, so as to create an effectual renunciation of the contract; for one party cannot by any act or declaration destroy the binding force

and efficacy of the contract. To justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute." Atkinson v. District Bond Co., 5 Cal.App.2d 738, 743, 43 P.2d 867, 869.

The letter written by Olson to the Commission cannot be said to support an anticipatory breach because it did not come to the attention of appellant until the instant litigation was under way. Restatement, Contracts, § 318(a), illustration 3; Patty v. Berryman, 95 Cal.App.2d 159, 212 P.2d 937.

■ The evidence is conflicting on the precise statements of the parties made at the June 19, 1951, meeting before the Commission. The District Court found that Campos gave Olson permission to go to the Mainland and do what he wanted there, so that Olson could make a living; and that Campos did not reserve his contractual rights in Olson's proceeds, and intended to waive his rights, thereby abandoning the contracts.

The District Court found:

"XIII. That plaintiff's conduct, by statement and action at the June 19, 1951, meeting, together with Campos' failure to make any demand upon Olson for any share in Mainland purses until September, 1953, after a substantial period of financial success on Olson's part, constituted a waiver of any contractual rights which Campos might have had to a manager's share of the proceeds of fights which Olson engaged in on the Mainland under Flaherty's management. Campos did not assert to Olson any rights of management after June 19, 1951."

■ This finding is supported by substantial evidence. No breach of the contract by Olson having been shown, it necessarily follows that no inducement of a breach by Flaherty occurred. See Case v. Kadota Fig Ass'n of Producers, 35 Cal.2d 596, 220 P.2d 912; Augustine v. Trucco, 124 Cal.App.2d 229, 268 P.2d 780.

Judgment affirmed.