518 P.2d 1376 (1973)
Ben W. MEINHARDT, Plaintiff-Appellee,
v.
INVESTMENT BUILDERS PROPERTIES COMPANY, a partnership, et al., Defendants-Appellants,
Roger's Electric, Inc., a Colorado corporation, et al., Defendants.
Nos. 73-076, 73-270.
Colorado Court of Appeals, Div. I.
December 18, 1973.
Rehearing Denied January 8, 1974.
*1377 Spurgeon, Aman & Hanes, Richard W. Hanes, Gregory R. Piche, Colorado Springs, for plaintiff-appellee.
Frank W. Davis, Colorado Springs, Theodore M. Smith, Denver, for defendants-appellants.
Not Selected for Official Publication.
*1378 COYTE, Judge.
Plaintiff purchased the electrical contracting business of Archie's Electric on March 15, 1972, from R. M. Archibald. As part of the transaction, plaintiff assumed an oral contract with Investment Builders Properties Company, a partnership composed of John W. Dawson and Joseph M. Birdsell, hereinafter referred to as defendants, for electrical work on an apartment complex under construction by them. Plaintiff worked on the apartment complex through June 15, 1972. On June 16th, defendants barred plaintiff's workmen from the project, and shortly thereafter they hired a different electrical contractor on a cost-plus basis to finish the project.
Plaintiff then filed a mechanic's lien statement and filed suit seeking to foreclose his lien claim. After trial to the court, judgment was entered in his favor in the amount of $62,053.07. Defendants appeal contending that plaintiff breached the original contract; that plaintiff could not recover on a quantum meruit basis when a contract establishing a fixed price was in existence; and that defendants should have been permitted to make discovery pending appeal. We affirm.

BREACH
The oral contract between Archie's Electric and defendants had a contract price of $65,000. This figure was agreed upon orally on approximately December 6, 1971. Under the terms of that oral agreement, defendants were to make monthly payments to the electrical contractor based upon materials delivered and incorporated into the project. At the time plaintiff assumed the contract, Archie's Electric had delivered approximately $20,000 worth of materials to the building site. Defendants were billed for this amount and for subsequent labor and materials incorporated into the project, but defendants refused to make any payments until a written contract was signed. In the meantime, defendants revised the plans for the apartment project and made significant field changes, alterations and additions to the electrical work, thereby increasing the scope of the labor and materials required beyond that contemplated in the original contract. Thereafter, on various occasions until June 2nd, the parties discussed the written contract and payments to be made; on that date, plaintiff left a proposed written contract with defendants which provided for a total contract price of $75,841. Defendants rejected that contract.
On June 6th, plaintiff wrote to defendants giving them the alternative of either accepting the $75,841 contract covering the expanded scope of electrical work or paying plaintiff for labor and materials expended to date, in which case plaintiff would complete the contract on a cost-plus basis. If neither of these alternatives were accepted, plaintiff stated that he would terminate work on the job and would seek to use available legal means to protect his position. No further contacts were made between the parties relative to a renegotiated contract.
On June 14th, a transformer was placed on the premises by the city, and defendants requested that power be connected so that it would be available in the buildings. Plaintiff advised defendants that he would not turn the power on until the contract issue was resolved, but he continued working on the project. On the morning of June 16th, defendants' security forces prevented plaintiff's employees from entering the project and thereafter continued to refuse them admittance.
The trial court found that the changes and additions requested by the defendants substantially increased the scope of the labor and materials required beyond that contemplated by the original oral contract. Further, the court found that plaintiff continued work under the original contract until June 16th, when defendants' security guards prevented access to the project. Since these findings were amply supported by the evidence, they will not be disturbed on review. Carter v. Pigg, 146 Colo. 306, 361 P.2d 437.
*1379 Plaintiff sought to renegotiate the total contract price to conform to additional work required by defendants. A meeting of minds of contracting parties is required not only to make a contract, but also to modify it after it is made. See Western Air Lines, Inc. v. Hollenbeck, 124 Colo. 130, 235 P.2d 792. Here, the original contract between the parties was negotiated on a unit-price basis covering the scope of work set forth in Archie's Electric's proposal of December 6, 1971, and the changes required by defendants substantially extended the scope of the electrical work beyond that contemplated in the agreement. The trial court correctly held that plaintiff was justified in seeking to negotiate new terms for the modified contract and that such action did not constitute a breach of contract by him.
Defendants argue that plaintiff's letter of June 6th, which stated alternative proposals, constituted a repudiation of the contract. We disagree. A repudiation of a contract must consist of a present, positive, unequivocal refusal to perform the contract, and a mere threat alone to abandon is not a "repudiation." Gold Mining & Water Co. v. Swinerton, 23 Cal.2d 19, 142 P.2d 22. Likewise, a mere declaration of a contingent intention not to be bound will not of itself amount to a breach, so as to constitute a renunciation of the contract. See Atkinson v. District Bond Co., 5 Cal.App.2d 738, 43 P.2d 867. Thus, we conclude that plaintiff's letter in the context of negotiation was not a repudiation of the contract.
Since the trial court found that plaintiff continued work under the original contract until he was prevented from further efforts by defendants, plaintiff was justified in negotiating the terms of modifications to the contract, and his letter stating alternative proposals did not constitute a repudiation of the contract. Accordingly, we hold that there was no breach of contract by plaintiff, and that defendants did breach the contract by refusing to allow plaintiff to continue performance. Such action on the part of defendants excused further performance by plaintiff. Jacobs v. Jones, 161 Colo. 505, 423 P.2d 321.

DAMAGES
On appeal, defendants argue that the trial court erred by awarding plaintiff the reasonable value of the labor and material utilized in the project because the construction contract fixed the total price to be paid and that price limits plaintiff's recovery to the percentage of completion of the contract performed by plaintiff. However, the trial court found that defendants' conduct constituted a breach of the contract which entitled plaintiff to rescind the contract and recover on a quantum meruit basis for the reasonable value of labor and materials. The complaint states a cause of action for the reasonable value of labor and materials without reference to the contract. When a construction contractor is confronted by a breach on the part of the other party, he may relinquish his rights under the contract and sue on a theory of quantum meruit, and, under such circumstances, his recovery is not limited by the contract rate. Jacobs v. Jones, supra; Zion Baptist Church v. Hebert, 94 Colo. 59, 28 P.2d 799; C. McCormick, Damages § 166.
Plaintiff testified as to the value of labor and materials furnished, which amounted to a total of $62,053.07. Plaintiff's records were examined by defendants' accountant and he testified that they were mathematically accurate. Two independent electrical contractors from the same area testified with respect to the reasonableness of plaintiff's charges. There was sufficient evidence to support the findings of the trial court as to the reasonable value of the materials and services furnished to the project, and accordingly, these findings will not be disturbed on review.

DISCOVERY
Defendants complain that the trial court refused to allow them to take the deposition of plaintiff during appeal.
*1380 C.R.C.P. 27(b) provides the circumstances under which a deposition may be taken pending the appeal of a judgment. It is contended that testimony could be elicited in the deposition which would impeach certain testimony given by plaintiff at the trial. However, at the time of trial, each party signified that it was ready for trial and no objection was made to proceeding to trial. Whether to allow such a deposition is within the discretion of the trial court, and our review of the record discloses no abuse of discretion. Indeed, under the facts before us, we can see no basis on which it would have been proper to have allowed such a deposition to be taken.
Judgment affirmed.
SILVERSTEIN, C.J., and RULAND, J., concur.