INVESTORS THRIFT CORPORATION,
an Arkansas Corporation,
Plaintiff,

v.

Joe B. HUNT, Insurance Commissioner of
the State of Oklahoma, and Receiver of
Community National Life Insurance
Company, Substitute Defendant for
Community National Life Insurance
Company, a corporation, Defendant.

No. FS 68 C–71.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

May 10, 1974.

William M. Stocks, and H. Clay Robin-
son, Pearce, Robinson & McCord, Fort
Smith, Ark., for plaintiff.

Don A. Smith, Harper, Young &
Smith, Fort Smith, Ark. and James O.
Ellison, Boone, Ellison & Smith, Tulsa,
Okl., for defendant.

MEMORANDUM OPINION

OREN HARRIS, District Judge.

The plaintiff, Investors Thrift Corpo-
ration, an Arkansas corporation (herein-
after referred to as "ITC"), filed this
action initially against the Community
National Life Insurance Company (here-
inafter referred to as "Community Na-
tional") seeking damages in the sum of
Six Hundred Thousand ($600,000.00)
Dollars allegedly suffered by the plain-
tiff as a result of the repudiation by the
defendant of certain agreements be-
tween ITC, Peoples Loan & Investment
Company (hereinafter referred to as
"PL&I"), and Community National.

Jurisdiction is based on diversity of
citizenship wherein the amount in con-
troversy exceeds $10,000.00, exclusive of
interest and costs. The plaintiff is an
Arkansas corporation with its principal
place of business located in Fort Smith,
Arkansas.

Community National, the initial de-
fendant in this proceedings, was an
Oklahoma corporation with its principal
place of business in Tulsa, Oklahoma.
During the pendency of this action,
Community National was placed in re-
ceivership by appropriate court action in
the District Court for Tulsa County,
Oklahoma, and Joe B. Hunt, Insurance
Commissioner for the State of Oklahoma
was appointed receiver. By appropriate

action, Joe B. Hunt, as receiver of Community National, was substituted as defendant in this cause.

In its Complaint, the plaintiff alleges that, on .or about December 9, 1967, the defendant agreed, for valuable consideration on demand of plaintiff, at any time before December 10, 1970, to purchase all the voting stock in ITC for Six Hundred Thousand ($600,000.00) Dollars providing, that ITC holds Eighty Percent (80%) of the voting stock of PL&I. It was intended that, under the agreement, Community National would acquire at least Eighty Percent (80%) of the voting stock of PL&I, and any other assets that ITC might possess, but that Community National would not incur any of the liabilities of ITC.[1]

The agreement between the parties was based on certain commitments entered into by the parties on December 9, 1967, and referred to as Commitments 1015, 1016, and 1017.

1. Letter dated December 9, 1967.
"Investors Thrift Corporation
1505 Towson Avenue
Fort Smith, Arkansas
Re: Commitment #1017
Gentlemen:
Community National Life Insurance Company hereby commits to purchase all the voting stock in Investors Thrift Corporation for $600,000.00, or Community National Life's stock at the then agreed upon price, at Investors Thrift Corporation's option, providing that Investors Thrift Corporation holds 80% of the voting stock of Peoples Loan & Investment Corporation, plus whatever shares of stock in Peoples Loan & Investment Company that Investors Thrift Corporation might hold of other classes.
The intent of the commitment is that Community National Life shall acquire at least 80% of the voting stock of Peoples Loan & Investment Company, and any other assets that Investors Thrift Corporation might possess, but shall incur none of the liabilities of Investors Thrift Corporation. This commitment is valid only upon the Peoples Loan & Investment Company calling upon Community National Life to perform on Commitment Number 1016, and shall exist for a period up until December 10, 1970, with Community National Life having 120 days in which to comply.

Further, the Complaint alleges that the agreement between the parties was conditioned upon PL&I calling upon Community National to purchase authorized, but unissued, stock of PL&I in such quantity of shares of stock at Three and $^{23}/_{100}$ths Dollars ($3.23) per share as would result in an aggregate purchase price of One Million Four Hundred Thousand Dollars ($1,400,000.00).

The plaintiff contends that, on January 16, 1968, the condition was performed by PL&I in calling upon Community National to purchase the authorized but unissued stock of PL&I pursuant to the provisions of Commitment 1016. The agreement provided further that Maurice Markham unconditionally agreed to manage Peoples Loan & Investment Company for a minimum of five years from the date of purchase. Further, the Commitment could be exercised by notice in writing at any time on or before December 10, 1970, and Community National would have a period of 120 days in which to comply.[2]

Investors Thrift Corporation
Page Two
December 9, 1967
Investors Thrift Corporation agrees to pay $100.00, and other valuable considerations, the receipt and sufficiency of which is hereby acknowledged.
COMMUNITY NATIONAL
LIFE INSURANCE
COMPANY
By: S/Jimmie J. Ryan
Jimmie J. Ryan, President
ACCEPTED:
S/Maurice Markham
Maurice Markham, President
INVESTORS THRIFT CORPORATION"

2. Letter dated December 9, 1967.
"Peoples Loan & Investment Company
1505 Towson Avenue
Fort Smith, Arkansas
Re: Commitment #1016
Gentlemen:
Community National Life Insurance Company offers to purchase from the authorized but unissued stock of Peoples Loan & Investment Company such quantity of shares of stock, at $3.23 per share, as will result in an aggregate purchase price of $1,400,000.00. The purchase price shall be paid by the delivery to Peoples Loan & Investment Company of $1,400,000.00 in first mortgage obligations held by Commu-

The commitment allegedly performed by PL&I consisted of a letter dated January 16, 1968, to Mr. Jimmy J. Ryan, President of Community National by John H. Haley, authorized agent of Peoples Loan and Investment Company.[3]

The plaintiff also contends that, by letter dated April 3, 1968, the defendant purported to rescind its agreement to purchase the PL&I stock, under Commitment # 1016, and, at the same time, purported to rescind its agreement to purchase all the voting stock in ITC for Six Hundred Thousand Dollars ($600,000.00) pursuant to Commitment 1017.[4]

Due to the willful breach of the contract, the plaintiff alleges that the defendant misappropriated substantial assets of PL&I resulting in damage to the plaintiff's property, for which plaintiff is entitled to recover.

The defendant admits there was an agreement between the parties which consisted of Commitments 1015, 1016

nity National Life. In the event that this is accomplished, Maurice Markham unconditionally agrees to manage Peoples Loan & Investment Company for a minimum of five years from date of purchase.

In the event Community National Life is called upon to execute this commitment, then Community National Life shall have a period of 120 days in which to comply. This commitment is exercisable by notice in writing to Community National Life, on or before December 10, 1970.

Peoples Loan & Investment Company agrees to pay $100.00, and other valuable considerations, the receipt and sufficiency of which is hereby acknowledged, for this commitment.

> COMMUNITY NATIONAL LIFE INSURANCE COMPANY
> By: S/Jimmie J. Ryan
> _____
> Jimmie J. Ryan, President

ACCEPTED:
S/ Maurice Markham
_____
Maurice Markham, President
PEOPLES LOAN & INVESTMENT COMPANY"

3. Letter dated January 16, 1968.
   "Mr. Jimmy J. Ryan, President
   Community National Life Insurance Co.
   Community Insurance Center
   103 East 3rd Street
   Tulsa, Oklahoma
   Dear Mr. Ryan:

   This is to notify you that we are exercising Commitment No. 1016 and accepting your offer to purchase for $1,400,000.00 authorized, but unissued stock of Peoples Loan and Investment Company at $3.23 per share.

   If you will make us a list of the first mortgage obligations you propose to transfer in payment, we will inspect them and reach a mutual agreement as to their adequacy.

   > Very truly yours,
   > PEOPLES LOAN AND INVESTMENT COMPANY
   > By
   > _____
   > John H. Haley
   > Its Authorized Agent

   JHH:ch"

4. Letter dated April 3, 1968.
   "Investors Thrift Corporation
   1505 Towson Avenue
   Fort Smith, Arkansas
   Gentlemen:

   During December of 1967, an offer to purchase was directed to your company by Community National Life Insurance Company.

   In view of your company's failure to accept this offer and in view of the circumstances which inherently negate performance by your company, you will hereby consider this letter a withdrawal and cancellation of any offer to purchase, commitment or any instrument of any nature directed to your company from Community National Life Insurance Company.

   > Very truly yours,
   > COMMUNITY NATIONAL LIFE INSURANCE COMPANY
   > By S/H. G. Bill Dickey,
   > _____
   > H. G. Bill Dickey,
   > Chairman, Executive Committee

   HGBD:st"

and 1017,[5] but it further consisted of additional agreements entered into by the parties on December 27, 1967.

The defendant affirmatively alleges an additional agreement between the parties referred to as "Agreement Between Peoples Loan And Investment Company and Community National Life Insurance Company", executed December 27, 1967.[6]

Further, the defendant specifically alleges that Commitments 1016 and 1017 were executed upon the basis of certain statements, representations and guarantees by the authorized representative of both the plaintiff, ITC, and PL&I; that said statements, representations and guarantees were false, fraudulent and untrue, and were known to be such when they were made and, therefore, constitute fraud and deceit upon the defendant. The defendant contends that the purported agreements are a nullity and are of no force and effect.

The defendant also alleges that representatives of the plaintiff and PL&I concealed and withheld certain material facts which, together with the misstatements, misrepresentations and fraudulent and false guarantees, relied upon by the defendant, constitute fraud and deceit and, therefore, nullify the agreements between the parties.

The case was tried to the Court, without the intercession of a jury, on October 18, 1973.[7] Prior to the trial the attorneys for the parties had each served and submitted trial briefs. At the conclusion of the trial, following the taking of evidence and the receipt of numerous exhibits, the Court gave the attorneys an opportunity, if they desired, to submit additional, or supplemental briefs, which have been received by the Court and considered along with the original briefs, the record, testimony of the witnesses and exhibits received thereto.

---

5. Commitment 1015 provided that Community National would purchase Amco stock and warrants owned by PL&I. Subsequently, the parties entered into an additional agreement whereby they agreed that Commitment 1015 would be in effect only, and in the event that Commitment 1016 and Commitment 1017 had been accomplished. It restates the provision in Commitment 1016 that Maurice Markham, President of PL&I and President of ITC agrees to manage PL&I for a minimum of five (5) years.

6.

"AGREEMENT BETWEEN
PEOPLES LOAN AND INVESTMENT COMPANY
and
COMMUNITY NATIONAL LIFE INSURANCE COMPANY

This agreement is entered into, by and between PEOPLES LOAN AND INVESTMENT COMPANY AND COMMUNITY NATIONAL LIFE INSURANCE COMPANY as follows: in consideration of the mutual promises and obligations contained in a commitment dated December 27, 1967, and for other valuable considerations, receipt and sufficiency of which are hereby acknowledged by both parties, the parties agree that the said 'take-out' commitment shall not be obligatory upon either party unless Community National Commitments numbers 1016 and 1017 are exercised by PEOPLES LOAN AND INVESTMENT COMPANY and INVESTORS THRIFT CORPORATION, respectively.

This agreement is executed this 27th day of December, 1967.

PEOPLES LOAN AND INVESTMENT COMPANY
By: S/M W Markham
COMMUNITY NATIONAL LIFE INSURANCE CO.
By: S/Jimmie J. Ryan"

7. On March 13, 1973, Judge Paul X Williams recused himself and the case was assigned to this Court.

In this diversity action, wherein the plaintiff, ITC, is an Arkansas corporation, and the defendant, Community National, is an Oklahoma corporation, and the amount involved exceeds $10,000.00, excluding interest and costs, jurisdiction is established. 28 U.S.C.A. § 1332.

It is a well known rule of law that a party who asserts a claim has the burden. of proving the allegations by establishing the claim against the adversary party. The plaintiff, ITC, having instituted this action has the burden of proving a breach of contract by Community National.

As an affirmative defense, the defendant alleges fraud and misrepresentation on the part of the plaintiff and thus has the burden of proving the allegation.

This is another of a number of related cases involving the parties. See FS 68 C–8, Larry R. McCord, Trustee for PL&I v. Joe B. Hunt, Insurance Commissioner of the State of Oklahoma and Receiver of Community National, et al, November 21, 1971.[8]

Until 1965, PL&I was controlled by Sam Sexton Jr. At that time, PL&I was purchased by the plaintiff, ITC, and controlled by one Maurice Markham. Each of these parties controlled separate corporations through which there were transactions which the Arkansas Bank Commissioner determined to be illegal. Additional transactions were entered into involving some of the same securities questioned by the Commissioner; they were likewise declared by the Arkansas Bank Commissioner to be improper. There were other transactions involving ITC, PL&I, Amco Industries and others, which, for the third time, caused the Bank Commissioner to inform PL&I that such transactions were improper.

In order to extricate itself from these difficulties, and to divest itself of its improper investments, PL&I negotiated a series of agreements with Community National in 1967. Community National agreed to buy authorized but unissued stock at the cost of $1,400,000.00 and the voting stock of ITC for $600,000.00. In re Peoples Loan & Investment Company of Fort Smith, 410 F.2d 851, 855 (8th Cir. 1969).

Maurice Markham was the principal in establishing Markham Homes, Inc., a "shell home business" in Oklahoma in 1960. In 1965, Markham Homes was in need of shell home financing, and Markham contacted a Mr. Austin Gatlin to assist him in this quest. Gatlin formerly owned a majority interest in PL&I. He, Gatlin, advised of establishing a similar financial institution in Arkansas. To secure capital for such an institution, Markham solicited help from certain friends and acquaintances in South Dakota. This resulted in the formation of ITC, with the voting stock controlled by Markham Homes, Inc.

Thinking that it would be easier to purchase a financial institution than to start one, Gatlin presented a letter, on August 10, from Sam Sexton, Jr., one of the owners of American Home Builders, Inc., offering to sell AHB for $500,000.-00. AHB held sixty-eight percent (68%) of the voting stock of PL&I. Through these and other transactions, Markham acquired and controlled the voting stock of ITC and PL&I. City Nat'l Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221, 224 (8th Cir. 1970). In one of the numerous agree-

---

8. For related cases see Vanderboom v. Sexton, 460 F.2d 362 (8th Cir. 1972); Investors Thrift Corp. v. Sexton, 347 F.Supp. 1207 (W.D.Ark.1972); In re Peoples Loan & Inv. Co., 316 F.Supp. 13 (W.D.Ark.1970); Vanderboom v. Sexton, 294 F.Supp. 1178 (W.D.Ark.1969), rev'd, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); In re Peoples Loan & Inv. Co., 292 F.Supp. 594 (W.D.Ark. 1968), rev'd, 410 F.2d 851 (8th Cir. 1969); City Nat'l Bank v. Vanderboom, 290 F.Supp. 592 (W.D.Ark.1968), aff'd, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S. Ct. 2196, 26 L.Ed.2d 560 (1970); Miskimins v. City Nat'l Bank, 248 Ark. 1194, 456 S.W. 2d 673 (1970).

ments, included as an exhibit to the testimony of Mr. John Haley (Exhibit "C"), Maurice Markham signed as President of both PL&I and ITC.

It is quite apparent from the record that PL&I, owned principally and controlled by ITC, was and had been having difficulty with the Commissioner of the Arkansas State Banking Department. It is also apparent that the defendant was having financial difficulties with the State Banking Commissioner of Oklahoma. Therefore, as an attempted mutual accommodation, the series of agreements giving rise to this litigation were entered into by the parties.

There is no dispute that these agreements, transactions, and commitments were entered into by the parties. The plaintiff relies principally on Commitments 1016 and 1017. The defendant relies upon the series of agreements which include Commitments 1015, 1016, and 1017, entered into on December 9, 1967, together with the additional agreements entered into by the parties on December 27, 1967. The Court has an analyzed each of the commitments and agreements and the relevant testimony as to their purpose and intent. The Court has no difficulty in concluding that each of the commitments and agreements entered into by the plaintiff and defendant, for mutual accommodation, is related and intertwined in a manner that each relies on the other and, therefore, results in the composite contract between the parties.

The instant litigation arises from Commitment 1017, dated December 9, 1967, wherein Community National commits to purchase all the voting stock in ITC for $600,000.00, provided that ITC holds Eighty Percent (80%) of the voting stock of PL&I. The intent of the commitment is that Community National shall acquire at least Eighty Percent (80%) of the voting stock of PL&I. It is further provided that the commitment is valid only upon PL&I calling upon Community National to perform on Commitment 1016, entered into on the same day, December 9, 1967. The commitment continues for a period until December 10, 1970, with Community National having 120 days in which to comply.

Commitment 1016 provides that Community National offers to purchase from the authorized but unissued stock of PL&I such quantity of shares of stock at $3.23 per share as will result in an aggregate purchase price of $1,400,000.-00. The purchase price was to be paid by the delivery to PL&I of $1,400,000.00 in first mortgage obligations held by Community National. This commitment provides that Maurice Markham unconditionally agrees to manage PL&I for a minimum of five (5) years from the date of purchase.

Commitment 1015 of the same date provides that Community National would purchase up to five hundred thousand (500,000) shares of Amco stock, for the price of $6.00 per share. However, one of the subsequent agreements entered into on December 27, signed by Jimmie J. Ryan, President, Community National, and Maurice Markham, President, PL&I and ITC, provides, inter alia, that:

"The intent of this commitment is that Commitment #1015 shall be null and void, unless, at the time of the request for performance by Peoples Loan & Investment Company, Community National Life has been provided the opportunity, or is in voting control of Peoples Loan & Investment Company.

It is further agreed by all parties that a contingent part of this agreement, and all of the Commitments (Numbers 1015, 1016 and 1017) is that Maurice Markham agrees to manage Peoples Loan & Investment Company for a period of not less than five years, and that this shall be his principal, but not necessarily, his only occupation."

This, together with other agreements entered into on December 27, 1967, leads the Court to the conclusion that Commitments 1015, 1016, and 1017, all consid-

ered together, constitute the total agreement of the parties.

The evidence in the case also reveals that ITC did not own any of the voting stock which it claims it had agreed to sell to Community National through the commitments that form the basis of the contract. The voting stock was owned by a Mr. Ilo Vanderboom, as Trustee for Dr. Irving Ortman, or Mr. Maurice Markham, at all times material to this litigation. As has been already stated, ITC was organized for the purpose of acquiring a type of business such as PL&I.

The sequence of ITC stock ownership was that initially it was controlled by Maurice Markham and his brother-in-law, Jimmy Willis; not individually by either of them, but in the name of Markham Homes, Inc., an Oklahoma corporation controlled by Markham. ITC subsequently issued the stock to M. W. Markham or Deloris B. Markham by two stock certificates dated June 27, 1966. On September 17, 1968, Markham assigned the stock to Vanderboom which was just prior to the commencement of this litigation on September 24, 1968. Notwithstanding these transactions, it is quite apparent that Mr. Maurice Markham controlled the stock even though there had been the assignment as above described. Through the exhibits, it is also disclosed that, prior to the several commitments and agreements, Mr. Markham, as the sole voting stockholder, elected Mr. B. A. McConnell as President. Mr. Ronald Butler was elected as Vice President and Mr. Markham as Secretary and Treasurer.

These loose transactions, as characterized by Judge Gibson in In re Peoples Loan and Investment Company, supra, were made for one purpose. Although questionable as to corporate authority and proper business dealings, in all instances, there was an effort by Mr. Markham to overcome the problems and difficulties with the Commissioner of the Arkansas Banking Department which PL&I had experienced over a period of time. Prior to the agreements of December 27, an audit was made available revealing some of the serious questions of compliance with state statutes. Mr. Markham had this information but, it is quite obvious, at this time, that Mr. Ryan, on the part of Community National, did not have the benefit of the audit. There were a series of letters and other documentation between the State Bank Commissioner and Honorable John H. Haley, as agent for the plaintiff, in which questions of some of the transactions were raised and warnings given by the Bank Commissioner as to what was expected of PL&I, together with specific directions that significant transactions could not be made without prior approval of the Banking Commissioner. A specific question was raised as to compliance with the statute involving the transfer to a John Haldi, Jr., as related to one of the agreements entered into between the parties on December 27, 1967.

These involvements caused the Banking Commissioner to bring about the filing for receivership of PL&I in the Chancery Court of Sebastian County on March 27, 1968, and the subsequent voluntary petition in bankruptcy of PL&I on May 16, 1968.

In September, 1967, the State Banking Commissioner questioned some of the activities of PL&I and, according to the Honorable John H. Haley, attorney and agent for the plaintiff, ITC, and PL&I, threatened PL&I with receivership if immediate action was not taken to bring PL&I into compliance. On December 19, Commissioner Adams of the State Banking Commission directed a letter to PL&I in which it stated that certain transactions were of immediate emergency. It was after this occurrence that PL&I and Community National entered into the several agreements affecting Commitments 1015, 1016, and 1017.

Notwithstanding the fact that Mr. Haley assured the Banking Commissioner that necessary steps had been taken, the Commissioner directed a letter, dated January 15, 1968, to Mr. Haley referring to the conference of January 8,

1968, which had to do with Commitment 1016 and Commitment 1017. Also, the Banking Commissioner insisted on complete documentation regarding the California Amco transaction as provided in Commitment 1015. Another meeting was scheduled by the Banking Commissioner for January 17, 1968. A conference was held January 26 at which time, Mr. Haley advised the Banking Commissioner that PL&I had consummated the sale of first mortgages to Richmond. At this time Mr. Haley, on behalf of PL&I, revealed a loan had been made to John Haldi, Jr. (Haldi). The Haldi loan exceeded twenty percent (20%) of the paid up capital and surplus and was determined by the Banking Commissioner to be in violation of Arkansas Stat. § 67–1006. Furthermore, the Commissioner stated that the Haldi loan was in direct violation of the Commissioner's specific instructions to PL&I.

Obviously, Mr. Haley, as the attorney and agent for Mr. Markham, ITC, and PL&I, must have known the status of these various transactions. None of the exhibits reveal that these assurances to the Banking Commissioner or the conference with the Banking Commissioner were made known to Mr. Ryan or anyone else of Community National, except for one meeting on February 6, 1968. At that meeting, Mr. Talmage Kolb was present along with Mr. Markham and the PL&I Board. However, the record does not disclose that Mr. Haley, Mr. Markham, or anyone else, advised at this meeting of the directions given to PL&I by the Banking Commissioner in his letter to Mr. Haley of January 29, 1968.

Further, the Banking Commissioner gave specific direction in the January 29 letter that PL&I would enter into no transaction or agreement without first giving the State Banking Department written notice of the exact nature of such transaction or agreement. Also, the Commissioner stated, with reference to the purchase of $1,400,000.00 of the common stock of PL&I, as follows:

"I cannot accept commitments to purchase stock due in 120 days or pass on the validity and sufficiency of this type of written commitment." (This refers to Commitment No. 1016)

The Court can only conclude that the action taken by Mr. Haley, on behalf of PL&I, in his letter of January 16, 1968, purporting to call upon Community National to perform Commitment 1016, was but another step in an effort to ward off or postpone the inevitable, receivership by action of the State Banking Commissioner.

The plaintiff contends that the call letter to perform on Commitment 1016 permits the plaintiff to recover under the provisions of Commitment 1017.

However, the proviso of Commitment 1017 requires ITC to hold eighty percent (80%) of the voting stock of PL&I. At the time of the recall letter of January 16, 1968, it is acknowledged that ITC did not then, or at any time, own eighty percent (80%) of the voting stock of PL&I. Subsequently, in September 1968, ITC purported to obtain options to purchase some additional stock.

In view of these transactions, a primary question for the Court is whether the admitted and acknowledged letter of April 3, 1968, by Community National to ITC, was a breach of the total contract between the parties or was justified in view of the circumstances which are claimed by the defendant in stating that these facts "inherently negate performance" by ITC.

■ It is well settled in this Circuit and elsewhere that neither party to an executory contract will take any action as relating to the contract that will in any way hinder or delay performance. In Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242 (8th Cir. 1969), Judge Gibson of our Eighth Circuit stated the rule as follows:

"It is hornbook law that an implied provision of every contract is that neither party to the contract will do anything to prevent performance thereof by the other party or commit any act that will hinder or delay performance.

Northeast Clackamas C. E. Co-op. v. Continental Cas. Co., 221 F.2d 329, 334 (9th Cir. 1955); George A. Fuller Co. v. United States, 69 F.Supp. 409, 411–412, 108 Ct.Cl. 70 (1947); Restatement of Contracts, § 315(1) (1932)." p. 257.

Section 315, Restatement of Contracts, provides when prevention or hinderance is a breach of contract.

Section 295 of Restatement provides for an excuse for non-performance of a condition or return promise.

" ' . . . [T]o justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute.' " Campos v. Olson, 9 Cir., 241 F.2d 661, 663; Atkinson v. District Bond Co., 5 Cal.App.2d 738, 743, 43 P.2d 867, 869.

█ In this case it was the duty of the plaintiff to have acquired eighty percent (80%) of the voting stock of PL&I before the plaintiff could avail itself of the terms of the contract to require Community National to purchase all of the voting stock of ITC for $600,000.00.

The plaintiff relies on the case of Wendt v. Ismert-Hincke Milling Company, 107 Ark. 106, 154 S.W. 194 (1913). The Court cannot agree. There the Arkansas Supreme Court referred to the performance of an executory contract not yet due. The plaintiff erroneously contends that it had until December 10, 1970, to perform. However, the plaintiff proposed the performance with its call letter of January 16, 1968, and the defendant had 120 days in which to comply. During the period of the 120 days, the plaintiff, by its own actions over a period of time, was rendered incapable of carrying on its business.[9]

Prior to the filing of the Complaint in this action, Peoples Loan and Investment Company, a subsidiary corporation of the plaintiff, Investors Thrift Corporation, and owned solely by Maurice Markham, filed a complaint (FS 68 C–28) against Community National and others alleging a breach of contract. The action was instituted by Peoples while the company was in a Chapter XI proceedings under the Bankruptcy Act in Larry R. McCord, Trustee v. Joe B. Hunt, Substitute Defendant for Community National, et al. The Complaint was based on Commitment 1016 and other agreements as is claimed in the instant litigation. The Court, Williams, J., in an unreported opinion made findings, inter alia, that the call letter of January 16, 1968, to Community for performance of Commitment 1016 was sufficient to require Community to deliver first mortgage notes to Peoples as provided in the Commitment. Further, the Court, in its findings, concluded that Community summarily rejected and repudiated its Commitment 1016. As a result, the Court concluded that, under the provision of Commitment 1016 and other commitments and agreements, Peoples was entitled to recover damages for breach of contract in the amount of $1,400,000.00 and, additionally, for the conversion of Richmond shares, Peoples was entitled to damage in the sum of $1,641,720.00. Judgment was entered accordingly on November 22, 1971. Subsequently, the parties reached a settlement and the Court, on May 5, 1972, entered final order awarding a judgment to Peoples in the sum of $2,000,000.00.

9. In a state proceedings filed in South Dakota, County of Minnehaha, Case 67–871, filed November 6, 1967, numerous plaintiffs, including Markham Homes, Inc. and Maurice Markham, filed against former owners of PL&I, it is alleged that in 1965, Maurice Markham of Pryor, Oklahoma, sought the counsel of Austin Gatlin and organized ITC. Markham employed Gatlin as an experienced counselor in the operation of ITC and through misrepresentations and fraudulent schemes caused the plaintiffs, including Markham, to acquire American Home Builders, Inc., including PL&I and other corporations. The Complaint alleged that the fair market value of the stock of American Home Builders, Inc. was less than nothing, and all its subsidiary corporations were in financial difficulty. This included PL&I.

■ Although this Court concludes that the plaintiff, ITC, failed to perform its part of the contract pursuant to the several agreements and, consequently, has failed to meet its burden of proof permitting a recovery on an anticipatory breach of the contract, if there had been such a breach established by the testimony and the record, the Court concludes it would be barred by the judgment entered on the same agreement by the same parties in the proceedings brought by Peoples.

The Court, therefore, concludes that, from the testimony in the case, exhibits, excellent briefs by the attorneys, the plaintiff has failed its burden of establishing by a preponderance of the evidence a claim for damages as alleged in the Complaint. Therefore, the Court is of the opinion that the Complaint is without merit and should be dismissed.

The Court incorporates its findings and conclusions in this opinion pursuant to the provisions of Rule 52 of the Federal Rules of Civil Procedure.

An Order will be entered in accordance with this opinion.